**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE MIDDLE DISTRICT OF TENNESSEE**
**NASHVILLE DIVISION**

IN RE:                                    )
                                          )          Case No. 3:19-bk-00690
DAVID KEVIN SHARP,                        )          Chapter 11
                                          )          Judge Marian F. Harrison
        Debtor.                           )

## PLAN OF REORGANIZATION DATED MARCH 12, 2019

The Debtor, David Kevin Sharp, proposes the following Plan of Reorganization pursuant to

Chapter 11 of Title 11, United States Code:

## ARTICLE I

## DEFINITIONS

Unless the context otherwise requires, the following terms shall have the following meanings

when used in initially capitalized form in this Plan. Such meanings shall be equally applicable to

both the singular and plural forms of such terms. Any term used in initially capitalized form in this

Plan that is not defined herein, but that is defined in the Bankruptcy Code, shall have the meaning

assigned to such term in the Bankruptcy Code.

1.1     "Administrative Claim" means any claim including, but not limited to, claims for

compensation of professionals made pursuant to §§ 330 and 331 of the Code and claims entitled to

administrative priority pursuant to §§ 507(a)(1) and 503(b) of the Code.

1.2     An "Allowed" Claim means any undisputed, liquidated and non-contingent Claim

whose amount was properly listed in Debtor's Schedules, to which no subsequent objection is filed

prior to the deadline set forth in this Plan, or any Claim that has been or is timely filed with the Clerk

of the Court by the Holder of the Claim and to which Claim no written objection to the allowance

thereof has been interposed within the period of time fixed by this Plan, or as to which Claim an

objection to the Claim has resulted in the allowance of a Claim, in whole or in part, by a Final Order of the Court. Anytime "Allowed" is used to describe a secured claim, Allowed Claim shall mean an amount not greater than the value of the collateral that secures such claim.

1.3 "Bankruptcy Code" means Title 11 of the United States Code, as amended.

1.4 "Bar Date" means the date fixed by the Court as the last day for filing proofs of claim.

1.5 "Chapter 11 Case" means the above entitled and numbered case commenced by the Debtor pursuant to the provisions of Chapter 11 of the Code.

1.6 "Claim" means: (i) right of payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured; or (ii) a right to an equitable remedy for breach of performance if such breach gives rise to a right of payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured or unsecured.

1.7 "Claimant" means the holder of a Claim against or an Interest in the Debtor.

1.8 "Claims Objection Deadline" means the earlier of (a) 90 days after the Effective Date of the Plan or (b) the date on which the Debtor files a Motion for Final Decree pursuant to 11 U.S.C. § 350.

1.9 "Confirmation" means the entry by the Court of the Confirmation Order.

1.10 "Confirmation Date" means the date upon which the Confirmation Order is entered by the Court.

1.11 "Confirmation Order" means the Order entered by the Court confirming the Plan.

1.12 "Court" means the United States Bankruptcy Court for the Middle District of

2

Tennessee, Nashville Division.

1.13    "Debtor" means David Kevin Sharp, as Debtor-in-Possession and with the status and rights conferred by 11 U.S.C. § 1107.

1.14    "Debtor's Assets" means all of the Debtor's assets and interests, including but not limited to, all prepetition and postpetition causes of action. The Debtor's Assets specifically include actions arising under Title 11, Chapter 5 of the Bankruptcy Code.

1.15    "Debtor's Professionals" means attorneys, accountants, appraisers, auctioneers or other professional persons hired by the Debtor and whose employment is approved by the Court pursuant to § 327 of the Bankruptcy Code or whose services are utilized by the Debtor in the ordinary course of the Debtor's business.

1.16    "Disclosure Statement" means the Disclosure Statement for this Plan of Reorganization, together with any supplements, amendments, or modifications thereto.

1.17    "Disputed Claim" means a Claim to which a written objection to the allowance or classification thereof, in whole or in part, is timely filed by any party-in-interest and as to which no Final Order or Final Judgment sustaining such objection or allowing or disallowing such Claim, in whole or in part, has been entered by the Court.

1.18    "Effective Date of the Plan" means 30 days after the Confirmation Order becomes a Final Order.

1.19    "Final Order" or "Final Judgment" means an order or judgment of the Court: (a) as to which the time to appeal, petition for certiorari, or seek reargument or rehearing has expired and as to which no appeal, reargument, certiorari petition, or rehearing is pending, or (b) if an appeal, reargument, certiorari or rehearing thereof has been sought, the order of the Court has been affirmed

3

by the highest court to which the order was appealed or from which the reargument or rehearing was sought, or certiorari has been denied, or the appeal is dismissed or rendered moot, and the time to take any further appeal or to seek certiorari or further reargument or rehearing has expired.

1.20    "Petition Date" means February 5, 2019.

1.21    "Plan" means this Plan of Reorganization and all future amendments and modifications thereof.

1.22    "Reel" means Reel Amusements, LLC, an entity solely owned and operated by the Debtor.

1.23    "Reel Bankruptcy" means the Chapter 11 bankruptcy case of Reel, which is pending before the Court as Case No. 3:18-bk-05883.

1.24    "Reel Plan" means the Plan of Reorganization proposed by Reel in the Reel Bankruptcy.

1.25    "Secured Claim" means an Allowed Claim secured by a lien, security interest or other charge against or interest in property in which the Debtor has an interest, or which is subject to setoff under § 553 of the Bankruptcy Code, to the extent of the value, determined in accordance with § 506(a) and § 506(b) of the Bankruptcy Code, of the interest of the holder of such Allowed Claim in the Debtor's interest in such property, or to the extent of the amount subject to such setoff as the case may be, and reduced by such further amount or amounts, if any, as may be determined by the Court after notice and a hearing to be the reasonable and necessary costs and expenses of preserving and disposing of such asset pursuant to § 506(c) of the Bankruptcy Code.

1.26    "Substantial Consummation" means the time at which the first distribution under the Plan is due to be made.

Case 3:19-bk-00690    Doc 27    Filed 03/12/19    Entered 03/12/19 07:22:54    Desc Main
Document    Page 4 of 28

1.27     "Unsecured Claim" means any Allowed Claim that is not a Secured Claim, including but not limited to the following: (a) Claims under executory contracts and unexpired leases that have heretofore been rejected, that are rejected under this Plan or that may be rejected prior to the Confirmation Date; (b) Claims of general trade creditors; (c) Claims for unpaid wages or benefits (including claims for vacation, sick and holiday pay) to the extent not entitled to be priority claims under 11 U.S.C. § 507 as provided herein; and (d) any other obligations, liabilities, damages or any other Claim held against the Debtor of every type and nature whatsoever incurred on or before, the date of the entry of the order for relief in this case.

## ARTICLE II

## CLASSIFICATION OF CLAIMS AND INTERESTS

Claims and Interests are divided into the following classes:

2.1     Class 1 shall include costs and expenses of administration as defined in 11 U.S.C. § 503, excluding Claims that are expressly included in the definition of any other class.  Class 1 includes Claims of professionals pursuant to §§ 330 and 331 of the Bankruptcy Code and fees due the United States Trustee pursuant to 28 U.S.C. § 1930.

2.2     Class 2 shall consist of the Secured Claim of Bank of America ("BOA") in the amount of $136,508.38, plus allowable post-petition fees and expenses, secured by a first priority lien on the Condominium.  The claim of BOA arises from a promissory note and mortgage (the "Condominium Mortgage") in favor of Countrywide Bank, FSB, recorded with the Walton County Clerk of Court (the "Clerk's Office") on March 26, 2008 in Book 2788, Page 2756.  The Condominium Mortgage was assigned to BOA pursuant to an Assignment of Mortgage recorded with the Clerk's Office on February 15, 2019 in Book 3097, Page 2376.  The Debtor intends to pay

5

BOA in full pursuant to the Plan and further has no intention of impairing the collateral securing repayment of the obligations to BOA.

2.3     Class 3 shall consist of the Secured Claim of Pinnacle Bank, defined in the Disclosure Statement as the First Pinnacle Claim, in the amount of $142,001.93.  The Debtor's obligations to Pinnacle Bank on the First Pinnacle Secured Claim arises from a promissory note and open ended deed of trust (the "First Pinnacle DOT") dated on or around August 21, 2006 in the original principal amount of $300,000.00 and recorded with the Rutherford County Register of Deeds (the "Register's Office") on August 25, 2006 in Book 658, Pages 1794-1801 and subsequently modified by that certain Modification of Deed of Trust dated September 15, 2009 and recorded with the Register's Office on September 15, 2009 in Book 947, Pages 2421-43.  The Debtor intends to satisfy the First Pinnacle Claim by paying the same in full in accordance with the terms of the Plan and further has no intention of impairing the collateral securing repayment of the Debtor's obligations to Pinnacle Bank.

2.4     Class 4 shall consist of the Secured Claim of Fifth Third Bank ("FTB").  FTB asserts a secured claim in the amount of $78,459.38 as of the Petition Date (the "FTB Claim"), secured by a second position lien on the Residence.  The Debtor's obligation to FTB arises from a promissory note dated February 23, 2015 in the original principal amount of $338,750.00 and secured by an open-ended deed of trust recorded with the Register's Office on and recorded with the Register's Office on April 23, 2015 in Book 1369, Pages 2593-2619 (the "FTB DOT").  The Debtor intends to satisfy the FTB Claim by paying the same in full in accordance with the terms of the Plan and further has no intention of impairing the collateral securing repayment of the Debtor's obligations to FTB.

2.5     Class 5 shall consist of the Secured Claim of U.S. Bank ("USB").  USB has a claim of

$35,860.86 as of the Petition Date (the "USB Claim"), secured by a lien on the Debtor's 2016 Cadillac Escalade (the "Vehicle"). The USB Claim arises from a purchase money loan taken by the Debtor for the Debtor's purchase of the Vehicle and is secured on the Vehicle pursuant to a security agreement with USB and a notation of USB on the Vehicle's certificate of title. The Debtor intends to pay the USB Claim in full on the terms set forth in the Plan and described below.

2.6     Class 6 shall consist of the Secured Claim of Mass Mutual. Mass Mutual holds a secured claim in the amount of $15,163.82 as of the Petition Date (the "Mass Mutual Claim"), secured by setoff rights against the Debtor's 401(k) maintained therewith. The Mass Mutual Claim arises from a loan taken by the Debtor against the balance of his 401(k) maintained with Mass Mutual. The Debtor intends to pay the Mass Mutual Claim in full on the terms set forth in the Plan and described below.

2.7     Class 7 shall consist of the unsecured claims of Seacoast National Bank, which has an unsecured claim for $142,029.26 against the Debtor, and NBKC Bank, which has an unsecured claim for $142,029.26 against the Debtor. These claims were originated by Credibility Capital and are hereinafter collectively referred to as the "Credibility Claim," with the creditors collectively referred to as the "Credibility Creditors"). The Credibility Creditors are unique in that they have expressed an intent to seek non-dischargeability of the Credibility Claim against the Debtor. The Debtor disputes that the Credibility Claim is non-dischargeable, and he is prepared to defend against it, but the cost of such defense could exceed $10,000.00 and therefore not be in the interest of the estate, the other creditors, or the Debtor's reorganization. Instead, the Debtor proposes that the Credibility Claim shall be deemed fully satisfied upon the Debtor's payment of the amounts set forth in the Plan and described below.

7

2.8     Class 8 shall consist of the unsecured claim of Pinnacle Bank, defined in the Disclosure Statement as the Second Pinnacle Claim.  The Second Pinnacle Claim is the claim of Pinnacle Bank for $1,041,621.84, less the amount owed on the First Pinnacle Claim set forth above. The Second Pinnacle Claim arises from the judgment lien described in Section C(b) above, which will be deemed an avoidable transfer and therefore treated as wholly unsecured against the Debtor. The Second Pinnacle Claim is classified separately from the remaining unsecured claims due to its unique characteristics.  Specifically, unlike the Debtor's other unsecured debts, the Second Pinnacle Claim is collectible against the Debtor and his non-filing spouse, whereas the remaining unsecured debts of the Debtor are collectible against the Debtor alone.  Because nearly all of the Debtor's assets are owned with his non-filing spouse in tenancy by the entireties, the assets from which Pinnacle Bank may recover on the Second Pinnacle Claim in a chapter 7 liquidation or under state law differs materially from the assets available to all other unsecured creditors.  The Debtor proposes to treat the Second Pinnacle Claim in the manner set forth below.

2.9     The Class 9 Claims are the general unsecured claims of creditors of Reel to which the Debtor personally guaranteed (the "Guarantee Liability").   Some of the Guarantee Liability is secured on certain of the Debtor's assets, such as the First Pinnacle Claim and the FTB Claim (the "Secured Guarantee Liability"), while the remainder that is not separately scheduled in the Plan is unsecured with respect to the Debtor (the "Guaranteed Unsecured Claims").  The total amount of the Guaranteed Unsecured Claims is $723,642.47.  A detailed listing of the Guaranteed Unsecured Claims is attached to the Disclosure Statement as Exhibit A.  Exhibit A contains the amount in which such Guaranteed Unsecured Claims are proposed to be deemed as allowed unsecured claims. If an asserted claim to which Reel is also liable is not contained on this list, or if a claimant believes

8

the amount is inaccurate, the Plan shall be considered either to object to the allowance of, or the amount of, the claim. The hearing on any objection to this allowance or disallowance shall be consolidated with the hearing on confirmation of the Plan.

Reel has scheduled all of the Guaranteed Unsecured Claims as unsecured claims in its plan of reorganization filed in the Reel Bankruptcy, which are to be paid in the manner set forth therein. The Debtor intends to treat the Guaranteed Unsecured Claims in his plan by renewing his personal guarantee of the Guaranteed Unsecured Claims, but only in the amount to be paid thereto by Reel in Reel's plan of reorganization. Thus, in the event Reel does not pay its unsecured creditors in accordance with its plan of reorganization, the Debtor shall remain personally liable for all amounts that Reel had proposed to pay such creditors therein. The remaining amounts of the Guaranteed Unsecured Claims shall be paid *pro-rata* with the Non-Guaranteed Unsecured Claims (defined below) based on the amount to be distributed thereto under the Plan.

2.10     The Class 10 Claims are the general unsecured claims of the Debtor that are unrelated to the Debtor's operation of Reel. The total amount of the Non-Guaranteed Unsecured Claims is $4,296.17. A detailed listing of the Non-Guaranteed Unsecured Claims is attached to the Disclosure Statement as Exhibit A. Exhibit A contains the amount in which such Non-Guaranteed Unsecured Claims are proposed to be deemed as allowed unsecured claims. If an asserted claim to which Reel is also liable is not contained on this list, or if a claimant believes the amount is inaccurate, the Plan shall be considered either to object to the allowance of, or the amount of, the claim. The hearing on any objection to this allowance or disallowance shall be consolidated with the hearing on confirmation of the Plan. The Debtor intends to treat the Non-Guaranteed Unsecured Claims by paying them *pro-rata* with the Guaranteed Unsecured Claims based on the amount to be distributed

thereto under the Plan.

      2.11    Class 11 shall consist of the Debtor's ownership interests in the Debtor's estate.

**ARTICLE III**

**SUMMARY OF PLAN AND TREATMENT OF CLAIMS**

**A. Classification of Claims and Interests**

      The Claims of creditors and Interests of equity security holders under the Plan are divided into the following classes:

| | |
|---|---|
| Class 1 | *Administrative Claims* |
| Class 2 | *Secured Claim of Bank of America* |
| Class 3 | *Secured Claim of Pinnacle Bank (the "First Pinnacle Claim")* |
| Class 4 | *Secured Claim of Fifth Third Bank* |
| Class 5 | *Secured Claim of U.S. Bank* |
| Class 6 | *Secured Claim of Mass Mutual* |
| Class 7 | *Unsecured Claims of Seacoast National Bank and NBKC Bank (the "Credibility Claim")* |
| Class 8 | *Unsecured Claim of Pinnacle Bank (the "Second Pinnacle Claim")* |
| Class 9 | *Guaranteed Unsecured Claims* |
| Class 10 | *Non-Guaranteed Unsecured Claims* |
| Class 11 | *Ownership Interests* |

      **B.**      **Treatment of Claims**

      Class 1 and Class 11 are unimpaired as determined pursuant to 11 U.S.C. § 1124. All other classes are impaired. The following is a summary of the treatment provided in the Plan to each Class of Claims and Interests:

10

1.     <u>Class 1:  Administrative Expense Claims</u>.    Class 1 consists of Administrative Expense Claims that are deemed Allowed pursuant to 11 U.S.C. §§ 503 and 507(a)(2).  Except for quarterly fees owed to the United States Trustee, which will be paid when due, the holders of Class 1 Allowed Claims shall be fully paid within 10 business days of the later of: (i) the entry and finality of an order of the Court allowing such claim or (ii) the Effective Date of the Plan. The Debtor shall continue to make post-confirmation quarterly fee payments to the United States Trustee until entry of a Final Decree pursuant to 11 U.S.C. § 350.  Any administrative claims representing a liability incurred in the ordinary course of the Debtors' business may be paid in cash after the Confirmation Date.

2.     <u>Class 2:  Bank of America</u>.  Class 2 consists of the secured claim of BOA. The Class 2 Claim shall be Allowed in the amount of $136,508.38.  The Class 2 Claim shall be paid in full, with interest at four percent (4%) per annum in one hundred eighty (180) equal monthly installments beginning on the first day of the month that is six (6) months following the Effective Date of the Plan and continuing on the first day of each successive month until paid in full.  With respect to the Class 2 Claim, this results in regular monthly payments of $1,009.74.  BOA shall retain its lien on the Condominium under this Plan in the same manner and priority as existed on the Petition Date pending full payment of the Class 2 Claim as set forth herein.  The Debtor shall also retain all required insurance on the collateral securing the Class 2 Claim.  Any terms of the existing note and security agreement evidencing the Class 2 Claim which may conflict with the terms of the Plan shall be deemed modified by the terms of this Plan.

3.     <u>Class 3:  The First Pinnacle Claim</u>.  Class 3 consists of the First Pinnacle Claim, as defined above.  The Class 3 Claim shall be allowed in the amount of $142,001.93.  The Class 3

11

claim shall be paid in full, with interest at five point seven five percent (5.75%) per annum in one hundred twenty (120) equal monthly installments beginning on the first day of the month that is six (6) months following the Effective Date of the Plan and continuing on the first day of each successive month until paid in full. With respect to the Class 3 Claim, this results in regular monthly payments of $1,558.74. Pinnacle Bank shall retain its lien on the Residence under this Plan in the same manner and priority as existed on the Petition Date pending full payment of the Class 3 claim as set forth herein. The Debtor shall also retain all required insurance on the collateral securing the Class 3 Claim. The Debtor shall also retain his pledge of his life insurance policy currently pledged to Pinnacle Bank as additional security for the First Pinnacle Claim pending payment thereof in accordance with the Plan. The Debtor acknowledges, however, that in the event of a default of his obligations under the Plan, or a default of Reel's obligations under the Reel Plan, Pinnacle shall be entitled to recover any and all amounts owed to Pinnacle under applicable state law, subject to the provisions in such Plans governing default, notice thereof, and opportunity to cure. Any terms of the existing note and security agreement evidencing the Class 3 Claim which may conflict with the terms of the Plan shall be deemed modified by the terms of this Plan.

4. <u>Class 4: Fifth Third Bank</u>. Class 4 consists of the secured claim of Fifth Third Bank. The Class 4 Clam shall be Allowed in the amount of $78,459.38. The Class 4 Claim shall be paid in full, with interest at a rate of five point seven five percent (5.75%) per annum in sixty (60) equal monthly installments beginning on the first day of the month that is six (6) months following the Effective Date of the Plan and continuing on the first day of each successive month until paid in full. With respect to the Class 4 Claim, this results in regular monthly payments of $1,507.74. The Class 4 Claim shall be secured by a lien on the Residence under this Plan in the same manner and priority

12

as existed on the Petition Date pending full payment of the Class 4 Claim as set forth herein. The Debtor shall also retain all required insurance on the collateral securing the Class 4 Claim. Notwithstanding the foregoing, a portion of the Class 4 Claim is being satisfied by Reel in Reel's Plan. The Class 4 Claimant shall in no event receive more than the total amount of the Class 4 Claim from all combined sources, including but not limited to the Debtor and Reel. Any terms of the existing note and security agreement evidencing the Class 4 Claim which may conflict with the terms of the Plan shall be deemed modified by the terms of this Plan.

5.    Class 5: U.S. Bank. Class 5 consists of the secured claim of U.S. Bank. The Class 5 Claim shall be Allowed in the amount of $35,860.86. The Class 5 Claim shall be paid in full, with interest at a rate of four percent (4%) per annum in sixty (60) equal monthly installments beginning on the first day of the first month following the Effective Date of the Plan and continuing on the first day of each successive month until paid in full. With respect to the Class 5 Claim, this results in regular monthly payments of $660.43. U.S. Bank shall retain its lien on the Vehicle to secure payment of the Class 5 Claim pending full payment thereof. The Debtor shall also retain all required insurance on the collateral securing the Class 5 Claim. Any terms of the existing note and security agreement evidencing the Class 5 Claim which may conflict with the terms of the Plan shall be deemed modified by the terms of this Plan.

6.    Class 6: Mass Mutual. Class 6 consists of the secured claim of Mass Mutual. The Class 6 Claim shall be allowed in the amount of $15,163.82 The Class 6 Claim shall be paid in the same manner and on the same terms as provided in the Debtor's loan agreement with Mass Mutual executed prepetition. With respect to the Class 6 Claim, this results in regular weekly payments of $214.21 beginning on the first day of the first month that is six (6) months following the Effective

13

Case 3:19-bk-00690    Doc 27    Filed 03/12/19    Entered 03/12/19 07:22:54    Desc Main
Document      Page 13 of 28

Date and continuing each week until the Class 6 Claim is paid in full. Mass Mutual shall retain its offset rights against the Debtor's 401(k) plan to secure payment of the Class 6 Claim in the same manner and priority as existed prepetition pending full payment thereof. Any terms of the existing note and security agreement evidencing the Class 6 Claim which may conflict with the terms of the Plan shall be deemed modified by the terms of this Plan.

7.     <u>Class 7: Unsecured Claims of Seacoast National Bank and NBKC Bank (the "Credibility Claim")</u>.  Class 7 consists of the unsecured claims of Seacoast National Bank and NBKC Bank, which are collectively defined as the "Credibility Claim" above. The Credibility Claim arises from certain debt of Reel that the Debtor personally guaranteed. As set forth above, the Credibility Claim is unique from the other unsecured claims in this case because the Credibility Creditor has asserted that the Credibility Claim should be deemed non-dischargeable. The Debtor disputes that the Credibility Claim is non-dischargeable, but the cost to defend these claims would exceed the value of the treatment proposed herein and would also prejudice the estate, the other creditors, and the Debtor, which merits separate classification of the Credibility Claim.

The claim of Seacoast National Bank shall be Allowed in the amount of $142,029.26. The claim of NBKC Bank shall also be Allowed in the amount of $142,029.26, for a total of $284,058.52. The Credibility Claim shall be paid as follows

(i)     The first $65,000.00 of the Credibility Claim shall be paid by Reel pursuant to the plan of reorganization proposed in the Reel Bankruptcy, since Reel is the primary creditor thereon. The Debtor shall have no obligation to pay any portion of the Credibility Claim already provided for in the Reel Bankruptcy.

(ii)     The remaining $219,058.52 of the Credibility Claim shall be deemed fully

satisfied upon the Debtor's payment of $5,000.00 to each of Seacoast National Bank and NBKC Bank on the Effective Date of the Plan in full satisfaction of the Credibility Claim.

8.    <u>Class 8: the Unsecured Claim of Pinnacle Bank (the "Second Pinnacle Claim")</u>. Class 8 consists of the unsecured portion of the claim of Pinnacle Bank after payment of the First Pinnacle Claim, defined above as the Second Pinnacle Claim. While Pinnacle Bank has obtained a judgment lien against the Debtor's assets, such judgment lien is an avoidable preferential transfer, as it was obtained within the ninety (90) days before the Petition Date, so it is hereinafter treated as an unsecured claim. The Second Pinnacle Claim is Allowed in the amount of the full amount of the Pinnacle Claim, less the amount to be paid thereto on the First Pinnacle Claim. The Second Pinnacle Claim arises from certain debt of Reel that the Debtor personally guaranteed. While treated as unsecured, the Second Pinnacle Claim is unique from the remaining Guaranteed Unsecured Claims in this case because the Debtor's non-filing spouse is also personally liable as a guarantor on the Second Pinnacle Claim, whereas the remaining Guaranteed Unsecured Claims are owed by the Debtor alone. Because nearly all of the Debtor's assets are owned with his non-filing spouse in tenancy by the entireties, the assets from which Pinnacle Bank may recover on the Second Pinnacle Claim in a chapter 7 liquidation or under state law differs materially from the assets available to all other unsecured creditors. The Debtor proposes to treat the Second Pinnacle Claim as follows:

a.    The first $475,000.00 of the Second Pinnacle Claim shall be paid by Reel as a secured creditor on the schedule set forth in Reel's plan of reorganization filed in the Reel Bankruptcy (the "Reel Secured Pinnacle Payment"). The Debtor shall have no direct liability on the Reel Secured Pinnacle Payment

15

provided that Reel is not in default on its plan obligations. The Debtor shall agree to retain its personal guarantee on the Reel Secured Pinnacle Payment, but only up to the amount thereof. Pinnacle Bank shall not be entitled to recover any portion of the Reel Secured Pinnacle Payment from the Debtor unless Reel has first defaulted on its Plan and not cured any such default within the terms and manner provided for in Reel's plan of reorganization.

b.    A portion of the Second Pinnacle Claim shall also be paid by Reel as an unsecured creditor via a pro-rata distribution on the schedule set forth in Reel's plan of reorganization filed in the Reel Bankruptcy (the "Reel Unsecured Pinnacle Payment"). The Debtor shall have no direct liability on the Reel Unsecured Pinnacle Payment provided that Reel is not in default on its plan obligations. The Debtor shall agree to retain its personal guarantee on the Reel Unsecured Pinnacle Payment, but only up to the amount thereof. Pinnacle Bank shall not be entitled to recover any portion of the Reel Unsecured Pinnacle Payment from the Debtor unless Reel has first defaulted on its Plan and not cured any such default within the terms and manner provided for in Reel's plan of reorganization.

c.    The remaining balance of the Second Pinnacle Claim shall be deemed satisfied in full upon the Debtor's payment of $75,000.00, which shall be paid interest only at four percent (4%) interest per annum beginning on the first day of the first month that is six (6) months following the Effective Date and continuing on the first of each month thereafter until the earlier of (a) the

16

sale of the Condominium, or (b) five years from the first day of the first month following the Effective Date, at which point the entire $75,000.00 shall become due and owing. Upon payment thereof, all of the Debtor's obligations to Pinnacle Bank shall be deemed satisfied, other than the Debtor's continuing contingent guarantees of the Reel Secured Pinnacle Payment and the Reel Unsecured Pinnacle Payment. To avoid any uncertainty, the Debtor affirms that in the event of any default of this Plan or the Reel Plan, subject to the default provisions therein regarding notice and opportunity to cure, Pinnacle Bank shall be entitled to pursue the full amount of the Pinnacle Claim against the Debtor and exercise such remedies as may exist under applicable law to collect such amounts.

      d.      The Debtor shall retain his pledge of his life insurance policy currently pledged to Pinnacle Bank as additional security for the Second Pinnacle Claim pending payment thereof in accordance with the Plan.

      9.      <u>Class 9: the Guaranteed Unsecured Claims</u>. Class 9 consists of the unsecured claims owed by the Debtor as a result of the Debtor's personal guarantee of certain debts owed by Reel and not otherwise classified above. The Guaranteed Unsecured Claims are hereby Allowed in the amount of $723,642.47, a detailed listing of which are set forth in Exhibit A to the Disclosure Statement.

Reel has already provided treatment for the Guaranteed Unsecured Claims in its plan of reorganization. The Debtor shall satisfy its obligations on the Class 9 Claims by renewing and affirming his personal guarantee thereon, but only in the amount to be paid thereon by Reel in Reel's

plan of reorganization. The renewed guarantee provided herein shall be expressly conditional upon a default by Reel on its plan of reorganization. Specifically, the Debtor shall have no obligation to pay any portion of the Class 9 Claims to be paid by Reel unless Reel has first defaulted on its Plan and not cured any such default within the terms and manner provided for in Reel's plan of reorganization, at which point the holders of the Class 9 Claims shall be entitled to recover these amounts from the Debtor, but only in the amount to be paid thereto in Reel's plan of reorganization. The remaining amount of the Class 9 Claims shall be paid *pro-rata* with the Class 10 Claims from a payment of $10,000.00 to be paid with zero percent (0%) interest in one hundred twenty (120) monthly installments beginning on the first day of the first month that is six (6) months following the Effective Date and continuing each month thereafter until paid in full. This results in monthly payments of $83.33 to the Guaranteed and Non-Guaranteed Unsecured Claims.

10. <u>Class 10: the Non-Guaranteed Unsecured Claims</u>. Class 10 consists of the unsecured claims owed by the Debtor in his individual capacity and not arising from any personal guarantee signed on behalf of Reel, which are defined above as the "Non-Guaranteed Unsecured Claims." The total amount of the Non-Guaranteed Unsecured Claims are set forth in Exhibit A to the Disclosure Statement and shall be deemed allowed in the amount of $4,296.17. The Class 10 Claims shall be paid *pro-rata* with the Class 9 Claims from a payment of $10,000.00 to be paid with zero percent (0%) interest in one hundred twenty (120) monthly installments beginning on the first day of the first month that is six (6) months following the Effective Date and continuing each month thereafter until paid in full. This results in monthly payments of $83.33 to the Guaranteed and Non-Guaranteed Unsecured Claims.

11. <u>Class 11: Ownership Interests in the Debtor</u>. David K. Sharp, the individual Debtor,

Case 3:19-bk-00690   Doc 27   Filed 03/12/19   Entered 03/12/19 07:22:54   Desc Main
Document      Page 18 of 28

holds the ownership interests in the Debtor's equity. Under the Plan, the Debtor shall retain all ownership interest in all property of the estate, subject to the terms of the Plan.

**ARTICLE IV**

**IMPAIRED AND UNIMPAIRED CLASSES OF CLAIMS AND INTERESTS**

Classes 1 and 11 are unimpaired under the Plan. All other classes are impaired.

**ARTICLE V**

**MEANS FOR EXECUTION OF THE PLAN**

5.1     The Debtor has remained a Debtor-In-Possession and in control of its affairs since the Petition Date. There has been no examiner, restructuring officer, or other professional appointed to control the Debtor's affairs.

5.2     During the pendency of this case, the Debtor has evaluated its operations and developed a going-forward budget (the "Budget"), which is attached to the Disclosure Statement as Exhibit B. This Budget was formed based on the Debtor's anticipated income from Reel—his sole source of income—and his anticipated expenses. Based on the Budget and available cash described below, the Debtor is likely to meet the repayment schedule set forth in the Plan.

The Budget identifies all of the Debtor's expected income and expenses. The Debtor's income and expense estimates are reasonable based on his consistent payroll from Reel and presume no unexpected income or expense shocks. To stabilize the Debtor in the event of any income or expense shocks and to cover any shortfall in the Budget, the Debtor will rely on the available balance of certain deposit accounts held with his non-filing spouse to satisfy his obligations under the Plan, as well as potential proceeds from real property held in tenancy by the entireties, including but not limited to the Debtor's Condominium (as defined in the Disclosure Statement).

19

## ARTICLE VI

## OBJECTIONS TO CLAIMS

6.1     This Plan expressly objects to the Claims filed by any creditor not referenced in this Plan (to include attachments hereto).

6.2     The Debtor proposes to resolve any claim objections, if disputed by such alleged Claimants, in connection with the confirmation hearing of the Plan.  The Debtor or any party in interest may file an objection to any Claim in any class on or before the Claims Objection Deadline. Objections not filed within such time will be deemed waived.  If any Claim or portion thereof is challenged by an objection or otherwise, distribution may, in the Debtor's sole discretion, be made on any portion of such disputed Claim which is undisputed pending resolution of the Claim allowance as a whole.

## ARTICLE VII

## EXECUTORY CONTRACTS AND UNEXPIRED LEASES

7.1     The only executory contract of which the Debtor is aware is an executory contract between Xtra Lease and Reel, of which the Debtor personally guaranteed Reel's performance.  Reel has proposed to assume this contract in its Plan of Reorganization.  The Debtor intends to assume all of his obligations under the personal guarantee thereunder.  The Debtor is not aware of any other leases or executory contracts that it anticipates assuming or rejecting upon Confirmation.  To the extent there are any executory contracts of the Debtor not specifically assumed hereunder, the Debtor hereby specifically rejects those contracts retroactively to the Petition Date.

# ARTICLE VIII

## PRESERVATION OF CAUSES OF ACTION

8.1     <u>Retention of Claims</u>.  All causes of action, including without limitation, actions for the avoidance and recovery pursuant to § 550 of the Bankruptcy Code of transfers avoidable by reason of §§ 544, 545, 547, 548, 549 or 553(b) of the Bankruptcy Code, or otherwise, and whether or not such actions have been commenced prior to the Effective Date of the Plan, shall be retained by the Debtor.  This expressly includes, but is not limited to, all causes of action identified by the Debtor in its Statement of Financial Affairs, as well as all causes of action that arose prior to and after the Petition Date.

8.2     <u>NOTICE TO POTENTIAL DEFENDANTS</u>:  In the Statement of Financial Affairs on file with the Court, the Debtor listed all payments made within ninety (90) days prior to the Petition Date, and payments made within one (1) year prior to the Petition Date to insiders of the Debtor. Each and every person listed as having received any such payment, as well as any other unlisted party that did, in fact, receive any such transfer, or believes it may have received such a transfer, is on notice that the rights of the Debtor to recover such payments are preserved for possible prosecution by the Debtor.  Recovery shall not be limited to the amounts set forth in the Statement of Financial Affairs.  To the extent the Debtor may have inadvertently omitted any such payment or transfer, all rights of the Debtor to avoidance and recovery as are provided by the Bankruptcy Code are also preserved.  Any party requiring explanation of the Code sections cited in this section or any of the statements herein should seek the advice of counsel.

21

**MISCELLANEOUS PROVISIONS**

9.1     <u>Distributions</u>.  Notwithstanding anything contained herein, all distributions to classes under this Plan will only be made after creditors in said classes have had their Claims fully fixed and Allowed by the Court; however, distribution may be made, in the Debtor's and/or Trustee's discretion, on any portion of a disputed Claim which is undisputed pending resolution of the Claim allowance as a whole.  On the date that any distribution to Allowed General Unsecured Claims is due, a Claim must be Allowed, non-contingent, liquidated and undisputed in order to have a right to share in such distribution.

9.2     <u>Payments During Bankruptcy Applied First to Principal</u>.  To the extent that any Claimant treated under this Plan has, prior to the Effective Date of the Plan, received any payments from any source on any obligation treated in this Plan, any such payments shall be applied first to principal.

9.3     <u>Conflict; Plan Controls</u>.  To the extent that any provisions of this Plan conflict with any of the terms or conditions of any note, security agreement, loan agreement, deed of trust or similar instrument, the provisions of this Plan shall control.

9.4     <u>Suspension of Payments</u>.  Upon motion and for cause shown, the Debtor may at any time move the Court to grant a moratorium or extension of distributions to Claimants in any of the classes set out herein for a reasonable period of time.  Additionally, the Debtor may propose amendments to or modifications of this Plan at any time prior to Confirmation of the Plan.  After Confirmation of the Plan, the Debtor, with approval of the Court, and so long as it does not materially or adversely affect the interests of Claimants, may remedy any defect or reconcile any

22

inconsistencies in the Plan or in the Confirmation Order in such manner as may be necessary to carry out the purposes and effect of this Plan.

      9.5   <u>Property Vests in Debtor</u>.  All title to all assets constituting property of the Debtor's estate shall vest in the Debtor free and clear of all claims, interests, liens or other charges of creditors arising prior to the Effective Date of the Plan, except as otherwise expressly provided for in this Plan.

      9.6   <u>No Restrictions Upon Operations</u>.  After the Confirmation Date, the Debtor shall operate and conduct its affairs free of any restrictions and notice requirements of the Bankruptcy Code and the Bankruptcy Rules (including, but not limited to, the employment and compensation of professionals, employees, managers, and independent contractors).  The Debtor may further execute such promissory notes, deeds, deeds of trust (including amendments, restatements or modifications thereof) or any other documents necessary to effectuate the terms of this Plan.

      9.7   <u>Permanent Injunction</u>.  Except as otherwise expressly provided in, or permitted under, this Plan, the Confirmation Order shall provide, among other things, that all Creditors and persons who have held, hold or may hold Claims that existed prior to the Effective Date, are permanently enjoined on and after the Effective Date against the: (i) commencement or continuation of any judicial, administrative, or other action or proceeding against the Debtor or any of its owned entities on account of Claims against the Debtor, or on account of claims released pursuant to the Plan; (ii) enforcement, attachment, collection or recovery by any manner or means of any judgment, award, decree, or order against the Debtor or any assets or property of same; or (iii) creation, perfection or enforcement of any encumbrance of any kind against the Debtor arising from a Claim. This provision does not enjoin the prosecution of any claims that arise on or after the Effective Date nor does it

Case 3:19-bk-00690   Doc 27   Filed 03/12/19   Entered 03/12/19 07:22:54   Desc Main
Document   Page 23 of 28

enjoin the determination in the Bankruptcy Court of the Allowed Amount of any Claims that arose prior to the Effective Date. Parties asserting entitlement to payment of Administrative Expenses incurred Prior to the Confirmation Date and Holders of Claims shall be permanently enjoined from asserting any Claim against the Debtor or its retained assets based upon any act or omission, transaction or other activity that occurred prior to the Confirmation Date, except as otherwise provided in the Plan, whether or not a proof of claim or interest was filed and whether or not such Claim or Interest is allowed under 11 U.S.C. § 502.

        9.8    <u>Prepayment of Plan Obligations</u>.  The Debtor shall be permitted without penalty to prepay any obligation under this Plan prior to the due date or maturity date of such obligation.  There shall be no penalty for any such prepayment.  Following any prepayment in full of any Claim or Class of Claims as set forth in the Plan, upon request of the Debtor, such claimant shall furnish the Debtor with written confirmation of satisfaction of his obligations under the Plan.

        9.9    <u>Payments Due Only on Business Days</u>.  Whenever any payment or distribution to be made under the Plan shall be due on a day other than a business day, such payment or distribution shall instead be made, without interest, on the next business day.

        9.10    <u>Cure Period</u>.  The Debtor shall be entitled to a fifteen (15) day grace period for all payment obligations arising pursuant to this Plan.

        9.11    <u>Interest Calculation</u>.  Whenever interest is calculated on a Claim prior to the Confirmation Date, the rate utilized shall be equal to the rate provided for such Claim in Article III of this Plan.

# ARTICLE X

# CLOSING OF THE CASE

10.1    Final Decree.  At such time as this case has been fully administered, that is, when all administrative matters or issues requiring action or resolution by the Court have been completed or resolved, the Confirmation Order has become final, and the due date for the first payments under the Plan has occurred, this case may be closed.  To close the case, the Debtor shall file a Motion for Final Decree as soon as practicable following Substantial Consummation.  The Debtor shall continue to pay U.S. Trustee quarterly fees until the Final Decree is entered.  Notwithstanding entry of a final decree in this case, the Debtor shall continue to make payments or distributions as provided in the Plan.

10.2    Continued Employment of Professionals.  In the period after the Confirmation Date but before closing of the case, the Debtor may continue to avail himself of the services of professional persons whose employment was approved at or prior to the Confirmation Date in completing administration of the case and in the consummation and performance of the Plan and, if necessary, employ additional professional persons to render services in and in connection with the case.  With respect to services rendered and expenses incurred in or in connection with the case by any professional person during such period, the professional person may render periodic billing thereafter to the Debtor who shall promptly pay the same, but each such payment shall be subject to review and approval by the Court as to the reasonableness thereof, as set forth herein below.  In its Motion for Final Decree, the Debtor shall detail all amounts paid during such period to professional persons as compensation for services rendered or reimbursement of expenses incurred, and with respect to which no prior application for allowance thereof has been made to the Court.  At any

25

hearing upon the Debtor's Motion for Final Decree, the Court shall consider and determine whether or not such payments shall be approved as reasonable.

## ARTICLE XI

## CONTINUING JURISDICTION OF THE COURT

11.1    In addition to the continued jurisdiction after the Confirmation Date that is provided for as a matter of law by the Bankruptcy Code and Bankruptcy Rules, the Court shall retain exclusive jurisdiction for the following:

(a)    To determine any and all objections to the allowance, extent, priority or nature of any Claims, the amount and proper classification of the Claim of any holder and the determination of such objections as may be filed to any Claims;

(b)    To determine any and all applications for compensation and reimbursement pursuant to §§ 330 or 331 of the Bankruptcy Code;

(c)    To determine any and all applications for the assumption or rejection of executory contracts and unexpired leases, and the allowance of any Claims resulting from rejection thereof;

(d)    To determine any and all applications, adversary proceedings and litigated matters that may be filed in this Court;

(e)    To interpret, enter Final Orders relating to, and otherwise act upon or in regard to the terms and provisions of the Plan;

(f)    To cause the correction of any defect, the curing of any omission or the reconciliation of any inconsistency in this Plan or the Confirmation Order as may be necessary to carry out the purposes and intent of the Plan;

(g)    To consider the modification of this Plan after the Confirmation Date as allowed

26

pursuant to the Federal Rules of Bankruptcy Procedure and the Bankruptcy Code;

(h)     Except as otherwise provided in this Plan, to make any determinations and to issue any Final Orders to enforce, interpret or effectuate the Plan;

(i)     To enter a Final Order concluding and terminating this case; and

(j)     To determine such other matters as may be provided for in the Confirmation Order.

DATED:  March 12, 2019              Respectfully Submitted,

**DAVID KEVIN SHARP**


/s/ David Kevin Sharp_____
DAVID KEVIN SHARP




/s/ Ned Hildebrand_____
Griffin S. Dunham
Henry E. ("Ned") Hildebrand, IV
DUNHAM HILDEBRAND, PLLC
1704 Charlotte Avenue, Suite 105
Nashville, TN 37203
615.933.5851
griffin@dhnashville.com
ned@dhnashville.com
*Attorneys for David Kevin Sharp*

28