## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
## NASHVILLE DIVISION

IN RE:                      )

                               )      Case No. 3:19-bk-00690

DAVID KEVIN SHARP,          )      Chapter 11

                                 )      Judge Marian F. Harrison

     Debtor.                   )

---

**THE DEADLINE FOR FILING A TIMELY RESPONSE IS: APRIL 30, 2018,**
**IF A RESPONSE IS TIMELY FILED, THE HEARING WILL BE: MAY 7, 2018**
**AT 9:00 A.M., COURTROOM 3, 701 BROADWAY, NASHVILLE, TENNESSEE 37203**

---

### NOTICE OF MOTION FOR ORDER APPROVING SALE FREE AND CLEAR
### OF LIENS, CLAIMS, AND ENCUMBRANCES PURSUANT TO 11 U.S.C. § 363

David Kevin Sharp (the "Debtor") has asked the Court to enter an order authorizing Debtor to sell certain real property located at 112 Seascape Drive, Unit 410, Miramar Beach, FL 32550 (the "Property") free and clear of liens, claims, and encumbrances pursuant to 11 U.S.C. § 363.

**YOUR RIGHTS MAY BE AFFECTED**. If you do not want the Court to grant the attached motion, or if you want the Court to consider your views on the motion, then on or before the date set forth above, you or your attorney must:

1.      File with the Court your response or objection explaining your position. **PLEASE NOTE: THE BANKRUPTCY COURT FOR THE MIDDLE DISTRICT OF TENNESSEE REQUIRES ELECTRONIC FILING. ANY RESPONSE OR OBJECTION YOU WISH TO FILE MUST BE SUBMITTED ELECTRONICALLY. TO FILE ELECTRONICALLY, YOU OR YOUR ATTORNEY MUST GO TO THE COURT WEBSITE AND FOLLOW THE INSTRUCTIONS AT: <https://ecf.tnmb.uscourts.gov>.**

     If you need assistance with Electronic Filing you may call the Bankruptcy Court at (615) 736-5584. You may also visit the Bankruptcy Court in person at: US Bankruptcy Court, 701 Broadway, 1st Floor, Nashville, TN (Monday - Friday, 8:00 A.M. - 4:00 P.M.).

2.      **Your response must state the above response deadline and hearing date, and that the motion to which you are responding is <u>Motion for Order Approving Sale Free and Clear of Liens, Claims, and Encumbrances Pursuant to 11 U.S.C. § 363.</u>**

3.      You must serve your response or objection **by electronic service through the Electronic Filing system** described above.

If a response is filed before the deadline stated above, the hearing will be held at the time and place indicated above. **_THERE WILL BE NO FURTHER NOTICE OF THE HEARING DATE_**. You may check whether a timely response has been filed by calling the Clerk's office at (615) 736-5584 or viewing the case on the Court's website at <www.tnmb.uscourts.gov>.

If you or your attorney do not take these steps, the court may decide that you do not oppose the relief sought in the application and may enter an order granting that relief.

DATED:  April 8, 2019                    Respectfully submitted,


/s/ Ned Hildebrand
Griffin S. Dunham
Henry E. ("Ned") Hildebrand, IV
DUNHAM HILDEBRAND, PLLC
1704 Charlotte Avenue, Suite 105
Nashville, TN 37203
615.933.5851
griffin@dhnashville.com
ned@dhnashville.com
*Counsel for the Debtor*

2

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
## NASHVILLE DIVISION

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | Case No. 3:19-bk-00690 |
| DAVID KEVIN SHARP, | ) | Chapter 11 |
| | ) | Judge Marian F. Harrison |
| Debtor. | ) | |

## MOTION FOR ORDER APPROVING SALE FREE AND CLEAR OF
## LIENS, CLAIMS, AND ENCUMBRANCES PURSUANT TO 11 U.S.C. § 363

Pursuant to 11 U.S.C. § 363 and Rule 6004 of the Federal Rules of Bankruptcy Procedure, David Kevin Sharp (the "Debtor") hereby files this motion (the "Sale Motion") seeking an order approving the sale of real property located at 112 Seascape Drive, Unit 410, Miramar Beach, FL 32550 (the "Property") to Mardelle and Neil Gibbs (the "Buyer"), free and clear of liens, claims, and encumbrances. The Debtor is not the sole owner of the Property. He and his non-filing spouse, Annette D. Sharp, own the Property as tenants by the entireties. By this Motion, the Debtor seeks to sell the Property and deposit the funds recovered therefrom, after approved costs and lien payoffs, into a separate joint bank account maintained by a depository institution approved by the United States Trustee. In support hereof, the Debtor states as follows:

### I. BACKGROUND

1.     On February 5, 2019, the Debtor filed a voluntary petition for relief, thereby commencing this case under Chapter 11, Title 11, United States Code, in the United States Bankruptcy Court for the Middle District of Tennessee (the "Court").

2.     Pursuant to sections 1107(a) and 1108 of the Bankruptcy Code, the Debtor is managing his property as debtor-in-possession.

3.      No trustee or examiner has been appointed in these cases, and no official committee of creditors or equity interest holders has been established.

4.      The Debtor is indebted to Bank of America, N.A. (the "Lender") in the amount of $136,508.38 pursuant to a promissory note and mortgage (the "Note" and the "Mortgage," respectively), recorded with the Walton County, Florida Clerk of Court (the "Clerk's Office") on March 26, 2008 in Book 2788, Page 2756. The Note and Mortgage were originally issued in favor of Countrywide Bank, FSB, but they were assigned to the Lender on February 15, 2019 in Book 3097, Page 2376.

5.      The Debtor has determined in its business judgment that a sale of the Property as set forth herein is in the best interest of creditors and the estate. The offer is the highest and best offer for the Property presented to the Debtor.

6.      The Debtor desires to sell the Property under terms and conditions substantially similar to the Purchase and Sale Agreement attached hereto with all relevant addenda (collectively, the "Agreement") as **Exhibit A**. The Terms of the Agreement are summarized as follows:

| | |
|---|---|
| Purchase Price: | $415,000.00 |
| Earnest Money: | $1,000.00 |
| Closing Date: | May 7, 2019 |
| Brokers' Commission: | The Seller's Broker, Ed and Terri Smith of Max Coastal Properties (the "Seller's Broker"), shall receive a commission of 6% of the Purchase Price. Any agent of the buyers shall be paid a portion of this commission by the Seller's Broker. |

2

## II. RELIEF REQUESTED

7.     By this Motion, the Debtor seeks entry of an order approving the sale of the Property on the terms set forth herein and granting other relief, including a finding that the sale is in good faith as contemplated by Section 363(m) of the Bankruptcy Code.

### **Approval of the Sale**

8.     Section 363 of the Bankruptcy Code authorizes a debtor in possession "after notice and a hearing . . . to use, sell, or lease other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1).

9.     Pursuant to Section 363(f) of the Bankruptcy Code, the Debtor requests that the Court authorize a sale of the Property free and clear of all liens, claims, and encumbrances. The Debtor is permitted to sell property free and clear of liens, claims, and encumbrances with regard to any holder of a claim secured by a lien because the price at which the property is to be sold is greater than the aggregate of the liens on such property and the entities asserting liens on the Property could be compelled in a legal or equitable proceeding to accept a money satisfaction of their interests. In this case, the price at which the Property is to be sold is greater than the value of the liens thereon.

### **A Finding that the Sale is in Good Faith**

10.     The Debtor further seeks the protections afforded to a purchaser with regard to sale transactions under Section 363(m) of the Bankruptcy Code, which provides that the reversal or modification on appeal of the Court's authorization of a sale or lease of property does not affect the validity of the sale or lease if the entity that purchased or leased the property did so in good faith.

11.     Although the Bankruptcy Code does not define good faith, courts have recognized that the kind of misconduct that would destroy a good faith status involves fraud, collusion between

3

the purchaser and other offerors, or an attempt to take grossly unfair advantage of other offerors. *In re Abbotts Dairies,* 788 F.2d 143, 147 (3rd Cir. 1986).

12.    The Debtor submits that the proposed method of conducting the sale is reasonable, appropriate, and designed to ensure fairness.  Unless specifically disputed at the hearing approving this Motion, the Debtor requests that the sale should be entitled to the protections of Section 363(m) of the Bankruptcy Code.  If the good faith of the Debtor or the Buyer is disputed, the Debtor requests that such dispute be determined at the hearing on this Motion.

<u>**Other Relief Requested: Deposit of Funds
into an Account other than the Debtor-In-Possession Account**</u>

13.    The Debtor requests that the Court allow the sale to be consummated immediately pursuant to Bankruptcy Rule 6004(h).

14.    The Debtor further requests the authority to use the proceeds from the sale of the Property to pay at closing (i) the lien of the Lender; (ii) any other claims that constitute liens on the Property; (iii) allowed commissions to the Seller's Broker, and (iv) any other costs of sale to be paid by the Debtor and his non-filing spouse pursuant to the Agreement, including but not limited to applicable closing costs to be taxed to the Debtor, if any.

15.    The Debtor notes that the Property does not belong to the Debtor exclusively.  It is owned by the Debtor and his non-filing spouse, Annette D. Sharp, in tenancy by the entireties. Accordingly, the estate does not own the Property.  It merely owns the Debtor's survivorship interest in the Property.  *See Robinson v. Trousdale County,* 516 S.W.2d 626, 632 (Tenn. 1974).  As such, the estate is prohibited from conveying anything other than the Debtor's survivorship interest in the Property.  *In re Redmond,* 15 B.R. 437 (Bankr. E.D. Tenn. 1981).  The proceeds of property owned

4

as tenants by the entireties retains its entireties status even when reduced to money. *White v. Watson,* 571 S.W.2d 493, 495 (Tenn. Ct. App. 1978).

16.     The Property is owned by the Debtor and his non-filing spouse as tenants by the entireties.  Under applicable law, the proceeds from the Property arising from any sale thereof are also held in tenancy by the entireties.  Accordingly, the Debtor respectfully requests that following the sale of the Property and payment of the various costs and liens as set forth above, the remaining proceeds be held in a separate bank account, jointly held by the Debtor and his non-filing spouse, with a depository institution approved by the United States Trustee to avoid any comingling with the Debtor's approved debtor-in-possession bank account (the "Marital Account").  The Debtor and his non-filing spouse shall thereafter be entitled to use the funds in the Marital Account (a) in the ordinary course of business, (b) as provided in the Disclosure Statement and/or Plan of Reorganization, which have been filed in this case (*See* Docket Nos. 26-27), or (c) in any other manner as the Debtor deems necessary for the benefit of the Debtor, the estate, or the Debtor's non-filing spouse, including the funding of certain needed repairs to the Debtor's primary residence.

WHEREFORE, the Debtor respectfully requests the Court enter an order (a) approving the sale of the Property; (b) finding that the Debtor and the Buyer have proceeded in good faith; (c) authorizing payments to the Lender, other lienors, the Seller's Broker, and other persons entitled to payment under the Agreement; (d) authorizing the sale to be consummated immediately as authorized by Bankruptcy Rule 6004(h), (e) authorizing the proceeds to be deposited into a separate joint bank account held by the Debtor and his non-debtor spouse in a depository institution approved by the United States Trustee to be used in the manner set forth herein, and (f) granting such other and further relief as is just and proper.

5

DATED:  April 8, 2019                Respectfully submitted,

/s/ Ned Hildebrand
Griffin S. Dunham
Henry E. ("Ned") Hildebrand, IV
DUNHAM HILDEBRAND, PLLC
1704 Charlotte Avenue, Suite 105
Nashville, TN 37203
615.933.5851
griffin@dhnashville.com
ned@dhnashville.com
*Counsel for the Debtor*

6

dotloop signature verification: dtlp.us/J2tL-AguR-7HXI

# Residential Contract For Sale And Purchase

**THIS FORM HAS BEEN APPROVED BY THE FLORIDA REALTORS AND THE FLORIDA BAR**



1* **PARTIES:** _____ David Kevin Sharp and Annette D. Sharp _____ ("Seller"),
2* and _____ Mardelle Gibbs and Neil Gibbs _____ ("Buyer"),
3 agree that Seller shall sell and Buyer shall buy the following described Real Property and Personal Property
4 (collectively "Property") pursuant to the terms and conditions of this Residential Contract For Sale And Purchase and
5 any riders and addenda ("Contract"):
6 **1. PROPERTY DESCRIPTION:**
7*   (a) Street address, city, zip: 112 Seascape Drive, 410, Miramar Beach, FL 32550
8*   (b) Located in: Walton _____ County, Florida. Property Tax ID #: 29-2S-21-42510-000-0410
9*   (c) Real Property: The legal description is _____
10     Unit 410 Ariel Dunes Condo Or 2724-2201 Or 2726-388 Or 2762-2568 Or Or 2771-604
11
12     together with all existing improvements and fixtures, including built-in appliances, built-in furnishings and
13     attached wall-to-wall carpeting and flooring ("Real Property") unless specifically excluded in Paragraph 1(e) or
14     by other terms of this Contract.
15   (d) Personal Property: Unless excluded in Paragraph 1(e) or by other terms of this Contract, the following items
16     which are owned by Seller and existing on the Property as of the date of the initial offer are included in the
17     purchase: range(s)/oven(s), refrigerator(s), dishwasher(s), disposal, ceiling fan(s), intercom, light fixture(s),
18     drapery rods and draperies, blinds, window treatments, smoke detector(s), garage door opener(s), security gate
19     and other access devices, and storm shutters/panels ("Personal Property").
20*     Other Personal Property items included in this purchase are: _____
21     "COMPLETELY FURNISHED"
22     Personal Property is included in the Purchase Price, has no contributory value, and shall be left for the Buyer.
23*   (e) The following items are excluded from the purchase: _____
24     N/A

25 **PURCHASE PRICE AND CLOSING**

26* **2. PURCHASE PRICE** (U.S. currency): .............................................................. **$415,000.00**
    ~~$400,000.00~~ *ADS*

27*   (a) Initial deposit to be held in escrow in the amount of **(checks subject to COLLECTION)** ....... $1,000.00
28     The initial deposit made payable and delivered to "Escrow Agent" named below
29*     **(CHECK ONE):** (i) ☐ accompanies offer or (ii) ☑ is to be made within __3__ (if left
30     blank, then 3) days after Effective Date. IF NEITHER BOX IS CHECKED, THEN
31     OPTION (ii) SHALL BE DEEMED SELECTED.
32*     Escrow Agent Information: Name: Mark Violette PA
33*     Address: 36008 Emerald Coast Parkway, Suite 201, Destin, FL 32541
34*     Phone: 850-424-7244     E-mail: khelmstetter@markviolettepa.com Fax:
35*   (b) Additional deposit to be delivered to Escrow Agent within _____ (if left blank, then 10)
36*     days after Effective Date .................................................................... $N/A
37     (All deposits paid or agreed to be paid, are collectively referred to as the "Deposit")
38*   (c) Financing: Express as a dollar amount or percentage ("Loan Amount") see Paragraph 8 ...... $321,000.00
39*   (d) Other: _____ ............. $N/A
40   (e) Balance to close (not including Buyer's closing costs, prepaids and prorations) by wire
    transfer or other **COLLECTED** funds ........................................ ~~$79,000.00~~ *DKS*
    **NOTE: For the definition of "COLLECTION" or "COLLECTED" see STANDARD S.** **$93,000.00** *ADS*

43 **3. TIME FOR ACCEPTANCE OF OFFER AND COUNTER-OFFERS; EFFECTIVE DATE:**
44   (a) If not signed by Buyer and Seller, and an executed copy delivered to all parties on or before
45* **03/07/2019** ~~03/05/2019~~ _____ , this offer shall be deemed withdrawn and the Deposit, if any, shall be returned
46     to Buyer. Unless otherwise stated, time for acceptance of any counter-offers shall be within 2 days after the day
47     the counter-offer is delivered.
48   (b) The effective date of this Contract shall be the date when the last one of the Buyer and Seller has signed or
49     initialed and delivered this offer or final counter-offer ("Effective Date").
50 **4. CLOSING DATE:** Unless modified by other provisions of this Contract, the closing of this transaction shall occur
51     and the closing documents required to be furnished by each party pursuant to this Contract shall be delivered
52*     ("Closing") on 04/23/2019 _____ ("Closing Date"), at the time established by the Closing Agent.

 
Case 3:19-bk-00690    Doc 38    Filed 04/08/19    Entered 04/08/19 13:42:25    Desc Main
Document     Page 9 of 37

dotloop signature verification: dtlp.us/J2tL-AguR-7HXI

**5. EXTENSION OF CLOSING DATE:**

(a) If Paragraph 8(b) is checked and Closing funds from Buyer's lender(s) are not available on Closing Date due to Consumer Financial Protection Bureau Closing Disclosure delivery requirements ("CFPB Requirements"), then Closing Date shall be extended for such period necessary to satisfy CFPB Requirements, provided such period shall not exceed 10 days.

(b) If an event constituting "Force Majeure" causes services essential for Closing to be unavailable, including the unavailability of utilities or issuance of hazard, wind, flood or homeowners' insurance, Closing Date shall be extended as provided in STANDARD G.

**6. OCCUPANCY AND POSSESSION:**

(a) Unless the box in Paragraph 6(b) is checked, Seller shall, at Closing, deliver occupancy and possession of the Property to Buyer free of tenants, occupants and future tenancies. Also, at Closing, Seller shall have removed all personal items and trash from the Property and shall deliver all keys, garage door openers, access devices and codes, as applicable, to Buyer. If occupancy is to be delivered before Closing, Buyer assumes all risks of loss to the Property from date of occupancy, shall be responsible and liable for maintenance from that date, and shall be deemed to have accepted the Property in its existing condition as of time of taking occupancy, except with respect to any items identified by Buyer pursuant to Paragraph 12, prior to taking occupancy, which require repair, replacement, treatment or remedy.

(b) ☐ **CHECK IF PROPERTY IS SUBJECT TO LEASE(S) OR OCCUPANCY AFTER CLOSING**. If Property is subject to a lease(s) after Closing or is intended to be rented or occupied by third parties beyond Closing, the facts and terms thereof shall be disclosed in writing by Seller to Buyer and copies of the written lease(s) shall be delivered to Buyer, all within 5 days after Effective Date. If Buyer determines, in Buyer's sole discretion, that the lease(s) or terms of occupancy are not acceptable to Buyer, Buyer may terminate this Contract by delivery of written notice of such election to Seller within 5 days after receipt of the above items from Seller, and Buyer shall be refunded the Deposit thereby releasing Buyer and Seller from all further obligations under this Contract. Estoppel Letter(s) and Seller's affidavit shall be provided pursuant to STANDARD D. If Property is intended to be occupied by Seller after Closing, see Rider U. POST-CLOSING OCCUPANCY BY SELLER.

**7. ASSIGNABILITY: (CHECK ONE):** Buyer ☐ may assign and thereby be released from any further liability under this Contract; ☐ may assign but not be released from liability under this Contract; or ☑ may not assign this Contract.

**FINANCING**

**8. FINANCING:**

☐ (a) Buyer will pay cash for the purchase of the Property at Closing. There is no financing contingency to Buyer's obligation to close. If Buyer obtains a loan for any part of the Purchase Price of the Property, Buyer acknowledges that any terms and conditions imposed by Buyer's lender(s) or by CFPB Requirements shall not affect or extend the Buyer's obligation to close or otherwise affect any terms or conditions of this Contract.

☑ (b) This Contract is contingent upon Buyer obtaining approval of a ☑ conventional ☐ FHA ☐ VA or ☐ other _____(describe) loan within 30_____ (if left blank, then 30) days after Effective Date ("Loan Approval Period") for **(CHECK ONE):** ☑ fixed, ☐ adjustable, ☐ fixed or adjustable rate in the Loan Amount (See Paragraph 2(c)), at an initial interest rate not to exceed 4.85_____ % (if left blank, then prevailing rate based upon Buyer's creditworthiness), and for a term of 30____(if left blank, then 30) years ("Financing").

   (i) Buyer shall make mortgage loan application for the Financing within ___5___ (if left blank, then 5) days after Effective Date and use good faith and diligent effort to obtain approval of a loan meeting the Financing terms ("Loan Approval") and thereafter to close this Contract. Loan Approval which requires a condition related to the sale by Buyer of other property shall not be deemed Loan Approval for purposes of this subparagraph.

Buyer's failure to use diligent effort to obtain Loan Approval during the Loan Approval Period shall be considered a default under the terms of this Contract. For purposes of this provision, "diligent effort" includes, but is not limited to, timely furnishing all documents and information and paying of all fees and charges requested by Buyer's mortgage broker and lender in connection with Buyer's mortgage loan application.

   (ii) Buyer shall keep Seller and Broker fully informed about the status of Buyer's mortgage loan application, Loan Approval, and loan processing and authorizes Buyer's mortgage broker, lender, and Closing Agent to disclose such status and progress, and release preliminary and finally executed closing disclosures and settlement statements, to Seller and Broker.

   (iii) Upon Buyer obtaining Loan Approval, Buyer shall promptly deliver written notice of such approval to Seller.

Buyer's Initials  03/04/19  03/04/19   Page 2 of 13   Seller's Initials _DKS_ _ADS_

FloridaRealtors/FloridaBar- 5   Rev. 4/17 © 2017 Florida Realtors® and The Florida Bar. All rights reserved.

106  (iv) If Buyer is unable to obtain Loan Approval after the exercise of diligent effort, then at any time prior to
107  expiration of the Loan Approval Period, Buyer may provide written notice to Seller stating that Buyer has been
108  unable to obtain Loan Approval and has elected to either:
109  (1) waive Loan Approval, in which event this Contract will continue as if Loan Approval had been obtained; or
110  (2) terminate this Contract.
111  (v) If Buyer fails to timely deliver either notice provided in Paragraph 8(b)(iii) or (iv), above, to Seller prior to
112  expiration of the Loan Approval Period, then Loan Approval shall be deemed waived, in which event this Contract
113  will continue as if Loan Approval had been obtained, provided however, Seller may elect to terminate this Contract
114  by delivering written notice to Buyer within 3 days after expiration of the Loan Approval Period.
115  (vi) If this Contract is timely terminated as provided by Paragraph 8(b)(iv)(2) or (v), above, and Buyer is not in
116  default under the terms of this Contract, Buyer shall be refunded the Deposit thereby releasing Buyer and Seller
117  from all further obligations under this Contract.
118  (vii) If  Loan Approval has been obtained, or deemed to have been obtained, as provided above, and Buyer
119  fails to close this Contract, then the Deposit shall be paid to Seller unless failure to close is due to: (1) Seller's
120  default or inability to satisfy other contingencies of this Contract; (2) Property related conditions of the Loan Approval
121  have not been met (except when such conditions are waived by other provisions of this Contract); or (3) appraisal
122  of the Property obtained by Buyer's lender is insufficient to meet terms of the Loan Approval, in which event(s) the
123  Buyer shall be refunded the Deposit, thereby releasing Buyer and Seller from all further obligations under this
124  Contract.
125 *  ☐ (c) Assumption of existing mortgage (see rider for terms).
126 *  ☐ (d) Purchase money note and mortgage to Seller (see riders; addenda; or special clauses for terms).
127

128  **CLOSING COSTS, FEES AND CHARGES**

129  **9.  CLOSING COSTS; TITLE INSURANCE; SURVEY; HOME WARRANTY; SPECIAL ASSESSMENTS:**
130  (a)  **COSTS TO BE PAID BY SELLER:**
131  • Documentary stamp taxes and surtax on deed, if any          • HOA/Condominium Association estoppel fees
132  • Owner's Policy and Charges (if Paragraph 9(c)(i) is checked)  • Recording and other fees needed to cure title
133  • Title search charges (if Paragraph 9(c)(iii) is checked)      • Seller's attorneys' fees
134 *  • Municipal lien search (if Paragraph 9(c)(i) or (iii) is checked)  • Other: _____
135  Seller shall pay the following amounts/percentages of the Purchase Price for the following costs and expenses:
136 *  (i) up to  $_____ or _____% (1.5% if left blank) for General Repair Items ("General Repair
137  Limit"); and
138 *  (ii) up to  $_____ or _____% (1.5% if left blank) for WDO treatment and repairs ("WDO Repair
139  Limit"); and
140 *  (iii) up to  $_____ or _____% (1.5% if left blank) for costs associated with closing out open or
141  expired building permits and obtaining required building permits for any existing improvement for which a
142  permit was not obtained ("Permit Limit").
143  If, prior to Closing, Seller is unable to meet the Maintenance Requirement as required by Paragraph 11 or the
144  repairs, replacements, treatments or permitting as required by Paragraph 12 then, sums equal to 125% of
145  estimated costs to complete the applicable item(s) (but not in excess of applicable General Repair, WDO
146  Repair, and Permit Limits set forth above, if any) shall be escrowed at Closing. If actual costs of required repairs,
147  replacements, treatment or permitting exceed applicable escrowed amounts, Seller shall pay such actual costs
148  (but not in excess of applicable General Repair, WDO Repair, and Permit Limits set forth above). Any unused
149  portion of escrowed amount(s) shall be returned to Seller.
150  (b)  **COSTS TO BE PAID BY BUYER:**
151  • Taxes and recording fees on notes and mortgages              • Loan expenses
152  • Recording fees for deed and financing statements             • Appraisal fees
153  • Owner's Policy and Charges (if Paragraph 9(c)(ii) is checked)  • Buyer's Inspections
154  • Survey (and elevation certification, if required)             • Buyer's attorneys' fees
155  • Lender's title policy and endorsements                       • All property related insurance
156  • HOA/Condominium Association application/transfer fees         • Owner's Policy Premium (if Paragraph
157  • Municipal lien search (if Paragraph 9(c)(ii) is checked)        9 (c)(iii) is checked.)
158 *  • Other: _____
159 *  (c)  **TITLE EVIDENCE AND INSURANCE:** At least __15__ (if left blank, then 15, or if Paragraph 8(a) is checked,
160  then 5) days prior to Closing Date ("Title Evidence Deadline"), a title insurance commitment issued by a Florida
161  licensed title insurer, with legible copies of instruments listed as exceptions attached thereto ("Title
162  Commitment") and, after Closing, an owner's policy of title insurance (see STANDARD A for terms) shall be



dotloop signature verification: dtlp.us/J2tL-AguR-7HXI

163 obtained and delivered to Buyer. If Seller has an owner's policy of title insurance covering the Real Property, a
164 copy shall be furnished to Buyer and Closing Agent within 5 days after Effective Date. The owner's title policy
165 premium, title search and closing services (collectively, "Owner's Policy and Charges") shall be paid, as set
166 forth below. The title insurance premium charges for the owner's policy and any lender's policy will be calculated
167 and allocated in accordance with Florida law, but may be reported differently on certain federally mandated
168 closing disclosures and other closing documents. For purposes of this Contract "municipal lien search" means a
169 search of records necessary for the owner's policy of title insurance to be issued without exception for unrecorded
170 liens imposed pursuant to Chapters 159 or 170, F.S., in favor of any governmental body, authority or agency.
171 (**CHECK ONE**):
172* ☐ (i) Seller shall designate Closing Agent and pay for Owner's Policy and Charges, and Buyer shall pay the
173 premium for Buyer's lender's policy and charges for closing services related to the lender's policy,
174 endorsements and loan closing, which amounts shall be paid by Buyer to Closing Agent or such other
175 provider(s) as Buyer may select; or
176* ☑ (ii) Buyer shall designate Closing Agent and pay for Owner's Policy and Charges and charges for closing
177 services related to Buyer's lender's policy, endorsements and loan closing; or
178* ☐ (iii) [**MIAMI-DADE/BROWARD REGIONAL PROVISION**]: Seller shall furnish a copy of a prior owner's policy
179 of title insurance or other evidence of title and pay fees for: (A) a continuation or update of such title evidence,
180 which is acceptable to Buyer's title insurance underwriter for reissue of coverage; (B) tax search; and (C)
181 municipal lien search. Buyer shall obtain and pay for post-Closing continuation and premium for Buyer's owner's
182* policy, and if applicable, Buyer's lender's policy. Seller shall not be obligated to pay more than $_____
183 (if left blank, then $200.00) for abstract continuation or title search ordered or performed by Closing Agent.
184 (d) **SURVEY**: On or before Title Evidence Deadline, Buyer may, at Buyer's expense, have the Real Property
185 surveyed and certified by a registered Florida surveyor ("Survey"). If Seller has a survey covering the Real
186 Property, a copy shall be furnished to Buyer and Closing Agent within 5 days after Effective Date.
187* (e) **HOME WARRANTY**: At Closing, ☐ Buyer ☐ Seller ☑ N/A shall pay for a home warranty plan issued by
188* _____ at a cost not to exceed $_____. A home
189 warranty plan provides for repair or replacement of many of a home's mechanical systems and major built-in
190 appliances in the event of breakdown due to normal wear and tear during the agreement's warranty period.
191 (f) **SPECIAL ASSESSMENTS**: At Closing, Seller shall pay: (i) the full amount of liens imposed by a public body
192 ("public body" does not include a Condominium or Homeowner's Association) that are certified, confirmed and
193 ratified before Closing; and (ii) the amount of the public body's most recent estimate or assessment for an
194 improvement which is substantially complete as of Effective Date, but that has not resulted in a lien being
195 imposed on the Property before Closing. Buyer shall pay all other assessments. If special assessments may
196 be paid in installments (**CHECK ONE**):
197* ☐ (a) Seller shall pay installments due prior to Closing and Buyer shall pay installments due after Closing.
198 Installments prepaid or due for the year of Closing shall be prorated.
199* ☑ (b) Seller shall pay the assessment(s) in full prior to or at the time of Closing.
200 IF NEITHER BOX IS CHECKED, THEN OPTION (a) SHALL BE DEEMED SELECTED.
201 This Paragraph 9(f) shall not apply to a special benefit tax lien imposed by a community development district
202 (CDD) pursuant to Chapter 190, F.S., which lien shall be prorated pursuant to STANDARD K.

203 **DISCLOSURES**

204 **10. DISCLOSURES:**
205 (a) **RADON GAS**: Radon is a naturally occurring radioactive gas that, when it is accumulated in a building in
206 sufficient quantities, may present health risks to persons who are exposed to it over time. Levels of radon that
207 exceed federal and state guidelines have been found in buildings in Florida. Additional information regarding
208 radon and radon testing may be obtained from your county health department.
209 (b) **PERMITS DISCLOSURE**: Except as may have been disclosed by Seller to Buyer in a written disclosure, Seller
210 does not know of any improvements made to the Property which were made without required permits or made
211 pursuant to permits which have not been properly closed. If Seller identifies permits which have not been
212 properly closed or improvements which were not permitted, then Seller shall promptly deliver to Buyer all plans,
213 written documentation or other information in Seller's possession, knowledge, or control relating to
214 improvements to the Property which are the subject of such open permits or unpermitted improvements.
215 (c) **MOLD**: Mold is naturally occurring and may cause health risks or damage to property. If Buyer is concerned or
216 desires additional information regarding mold, Buyer should contact an appropriate professional.
217 (d) **FLOOD ZONE; ELEVATION CERTIFICATION**: Buyer is advised to verify by elevation certificate which flood
218 zone the Property is in, whether flood insurance is required by Buyer's lender, and what restrictions apply to

   
Case 3:19-bk-00690   Doc 38   Filed 04/08/19   Entered 04/08/19 13:42:25   Desc Main
Document   Page 12 of 37

dotloop signature verification: dtlp.us/J2tL-AguR-7HXl

219 improving the Property and rebuilding in the event of casualty. If Property is in a "Special Flood Hazard Area"
220 or "Coastal Barrier Resources Act" designated area or otherwise protected area identified by the U.S. Fish and
221 Wildlife Service under the Coastal Barrier Resources Act and the lowest floor elevation for the building(s) and/or
222 flood insurance rating purposes is below minimum flood elevation or is ineligible for flood insurance coverage
223 through the National Flood Insurance Program or private flood insurance as defined in 42 U.S.C. §4012a, Buyer
224 ∗ may terminate this Contract by delivering written notice to Seller within _____(if left blank, then 20) days after
225 Effective Date, and Buyer shall be refunded the Deposit thereby releasing Buyer and Seller from all further
226 obligations under this Contract, failing which Buyer accepts existing elevation of buildings and flood zone
227 designation of Property. The National Flood Insurance Program may assess additional fees or adjust premiums
228 for pre-Flood Insurance Rate Map (pre-FIRM) non-primary structures (residential structures in which the insured
229 or spouse does not reside for at least 50% of the year) and an elevation certificate may be required for actuarial
230 rating.
231 (e) **ENERGY BROCHURE:** Buyer acknowledges receipt of Florida Energy-Efficiency Rating Information Brochure
232 required by Section 553.996, F.S.
233 (f) **LEAD-BASED PAINT:** If Property includes pre-1978 residential housing, a lead-based paint disclosure is
234 mandatory.
235 (g) **HOMEOWNERS' ASSOCIATION/COMMUNITY DISCLOSURE: BUYER SHOULD NOT EXECUTE THIS**
236 **CONTRACT UNTIL BUYER HAS RECEIVED AND READ THE HOMEOWNERS'**
237 **ASSOCIATION/COMMUNITY DISCLOSURE, IF APPLICABLE.**
238 (h) **PROPERTY TAX DISCLOSURE SUMMARY:** BUYER SHOULD NOT RELY ON THE SELLER'S CURRENT
239 PROPERTY TAXES AS THE AMOUNT OF PROPERTY TAXES THAT THE BUYER MAY BE OBLIGATED TO
240 PAY IN THE YEAR SUBSEQUENT TO PURCHASE. A CHANGE OF OWNERSHIP OR PROPERTY
241 IMPROVEMENTS TRIGGERS REASSESSMENTS OF THE PROPERTY THAT COULD RESULT IN HIGHER
242 PROPERTY TAXES. IF YOU HAVE ANY QUESTIONS CONCERNING VALUATION, CONTACT THE
243 COUNTY PROPERTY APPRAISER'S OFFICE FOR INFORMATION.
244 (i) **FOREIGN INVESTMENT IN REAL PROPERTY TAX ACT ("FIRPTA"):** Seller shall inform Buyer in writing if
245 Seller is a "foreign person" as defined by the Foreign Investment in Real Property Tax Act ("FIRPTA"). Buyer
246 and Seller shall comply with FIRPTA, which may require Seller to provide additional cash at Closing. If Seller
247 is not a "foreign person", Seller can provide Buyer, at or prior to Closing, a certification of non-foreign status,
248 under penalties of perjury, to inform Buyer and Closing Agent that no withholding is required. See STANDARD
249 V for further information pertaining to FIRPTA. Buyer and Seller are advised to seek legal counsel and tax
250 advice regarding their respective rights, obligations, reporting and withholding requirements pursuant to
251 FIRPTA.
252 (j) **SELLER DISCLOSURE:** Seller knows of no facts materially affecting the value of the Real Property which are
253 not readily observable and which have not been disclosed to Buyer. Except as otherwise disclosed in writing
254 Seller has received no written or verbal notice from any governmental entity or agency as to a currently
255 uncorrected building, environmental or safety code violation.

256 **PROPERTY MAINTENANCE, CONDITION, INSPECTIONS AND EXAMINATIONS**

257 **11. PROPERTY MAINTENANCE:** Except for ordinary wear and tear and Casualty Loss, and those repairs,
258 replacements or treatments required to be made by this Contract, Seller shall maintain the Property, including, but
259 not limited to, lawn, shrubbery, and pool, in the condition existing as of Effective Date ("Maintenance Requirement").
260 **12. PROPERTY INSPECTION AND REPAIR:**
261 ∗ (a) **INSPECTION PERIOD:** Buyer shall have 15_____ (if left blank, then 15) days after Effective Date ("Inspection
262 Period"), within which Buyer may, at Buyer's expense, conduct "General", "WDO", and "Permit" Inspections
263 described below. If Buyer fails to timely deliver to Seller a written notice or report required by (b), (c), or (d)
264 below, then, except for Seller's continuing Maintenance Requirement, Buyer shall have waived Seller's
265 obligation(s) to repair, replace, treat or remedy the matters not inspected and timely reported. If this Contract
266 does not close, Buyer shall repair all damage to Property resulting from Buyer's inspections, return Property to
267 its pre-inspection condition and provide Seller with paid receipts for all work done on Property upon its
268 completion.
269 (b) **GENERAL PROPERTY INSPECTION AND REPAIR:**
270 (i) **General Inspection:** Those items specified in Paragraph 12(b) (ii) below, which Seller is obligated to repair
271 or replace ("General Repair Items") may be inspected ("General Inspection") by a person who specializes in
272 and holds an occupational license (if required by law) to conduct home inspections or who holds a Florida
273 license to repair and maintain the items inspected ("Professional Inspector"). Buyer shall, within the Inspection
274 Period, inform Seller of any General Repair Items that are not in the condition required by (b)(ii) below by

 
Case 3:19-bk-00690 Doc 38 Filed 04/08/19 Entered 04/08/19 13:42:25 Desc Main
Document Page 13 of 37

dotloop signature verification: dtlp.us/J2tL-AguR-7HXI

275    delivering to Seller a written notice and upon written request by Seller a copy of the portion of Professional
276    Inspector's written report dealing with such items.

277    (ii) **Property Condition:** The following items shall be free of leaks, water damage or structural damage: ceiling,
278    roof (including fascia and soffits), exterior and interior walls, doors, windows, and foundation. The above items
279    together with pool, pool equipment, non-leased major appliances, heating, cooling, mechanical, electrical,
280    security, sprinkler, septic and plumbing systems and machinery, seawalls, and dockage, are, and shall be
281    maintained until Closing, in "Working Condition" (defined below). Torn screens (including pool and patio
282    screens), fogged windows, and missing roof tiles or shingles shall be repaired or replaced by Seller prior to
283    Closing. Seller is not required to repair or replace "Cosmetic Conditions" (defined below), unless the Cosmetic
284    Conditions resulted from a defect in an item Seller is obligated to repair or replace. "Working Condition" means
285    operating in the manner in which the item was designed to operate. "Cosmetic Conditions" means aesthetic
286    imperfections that do not affect Working Condition of the item, including, but not limited to: pitted marcite; tears,
287    worn spots and discoloration of floor coverings, wallpapers, or window treatments; nail holes, scrapes,
288    scratches, dents, chips or caulking in ceilings, walls, flooring, tile, fixtures, or mirrors; and minor cracks in walls,
289    floor tiles, windows, driveways, sidewalks, pool decks, and garage and patio floors. Cracked roof tiles, curling
290    or worn shingles, or limited roof life shall not be considered defects Seller must repair or replace, so long as
291    there is no evidence of actual leaks, leakage or structural damage.

292    (iii) **General Property Repairs:** Seller is only obligated to make such general repairs as are necessary to bring
293    items into the condition specified in Paragraph 12(b) (ii) above. Seller shall within 10 days after receipt of Buyer's
294    written notice or General Inspection report, either have the reported repairs to General Repair Items estimated
295    by an appropriately licensed person and a copy delivered to Buyer, or have a second inspection made by a
296    Professional Inspector and provide a copy of such report and estimates of repairs to Buyer. If Buyer's and
297    Seller's inspection reports differ and the parties cannot resolve the differences, Buyer and Seller together shall
298    choose, and equally split the cost of, a third Professional Inspector, whose written report shall be binding on
299    the parties.

300    If cost to repair General Repair Items equals or is less than the General Repair Limit, Seller shall have repairs
301    made in accordance with Paragraph 12(f). If cost to repair General Repair Items exceeds the General Repair
302    Limit, then within 5 days after a party's receipt of the last estimate: (A) Seller may elect to pay the excess by
303    delivering written notice to Buyer, or (B) Buyer may deliver written notice to Seller designating which repairs of
304    General Repair Items Seller shall make (at a total cost to Seller not exceeding the General Repair Limit) and
305    agreeing to accept the balance of General Repair Items in their "as is" condition, subject to Seller's continuing
306    Maintenance Requirement. If neither party delivers such written notice to the other, then either party may
307    terminate this Contract and Buyer shall be refunded the Deposit, thereby releasing Buyer and Seller from all
308    further obligations under this Contract.

309    (c)    **WOOD DESTROYING ORGANISM ("WDO") INSPECTION AND REPAIR:**

310    (i) **WDO Inspection:** The Property may be inspected by a Florida-licensed pest control business ("WDO
311    Inspector") to determine the existence of past or present WDO infestation and damage caused by infestation
312    ("WDO Inspection"). Buyer shall, within the Inspection Period, deliver a copy of the WDO Inspector's written
313    report to Seller if any evidence of WDO infestation or damage is found. "Wood Destroying Organism" ("WDO")
314    means arthropod or plant life, including termites, powder-post beetles, oldhouse borers and wood-decaying
315    fungi, that damages or infests seasoned wood in a structure, excluding fences.

316    (ii) **WDO Repairs:** If Seller previously treated the Property for the type of WDO found by Buyer's WDO
317    Inspection, Seller does not have to retreat the Property if there is no visible live infestation, and Seller, at Seller's
318    cost, transfers to Buyer at Closing a current full treatment warranty for the type of WDO found. Seller shall within
319    10 days after receipt of Buyer's WDO Inspector's report, have reported WDO damage estimated by an
320    appropriately licensed person, necessary corrective treatment, if any, estimated by a WDO Inspector, and a
321    copy delivered to Buyer. Seller shall have treatments and repairs made in accordance with Paragraph 12(f)
322    below up to the WDO Repair Limit. If cost to treat and repair the WDO infestations and damage to Property
323    exceeds the WDO Repair Limit, then within 5 days after receipt of Seller's estimate, Buyer may deliver written
324    notice to Seller agreeing to pay the excess, or designating which WDO repairs Seller shall make (at a total cost
325    to Seller not exceeding the WDO Repair Limit), and accepting the balance of the Property in its "as is" condition
326    with regard to WDO infestation and damage, subject to Seller's continuing Maintenance Requirement. If Buyer
327    does not deliver such written notice to Seller, then either party may terminate this Contract by written notice to
328    the other, and Buyer shall be refunded the Deposit, thereby releasing Buyer and Seller from all further
329    obligations under this Contract.

Case 3:19-bk-00690    Doc 38    Filed 04/08/19    Entered 04/08/19 13:42:25    Desc Main
Document    Page 14 of 37



dotloop signature verification: dtlp.us/J2tL-AguR-7HXI

(d) **INSPECTION AND CLOSE-OUT OF BUILDING PERMITS:**

(i) **Permit Inspection:** Buyer may have an inspection and examination of records and documents made to determine whether there exist any open or expired building permits or unpermitted improvements to the Property ("Permit Inspection"). Buyer shall, within the Inspection Period, deliver written notice to Seller of the existence of any open or expired building permits or unpermitted improvements to the Property. If Buyer's inspection of the Property identifies permits which have not been properly closed or improvements which were not permitted, then Seller shall promptly deliver to Buyer all plans, written documentation or other information in Seller's possession, knowledge, or control relating to improvements to the Property which are the subject of such open permits or unpermitted improvements.

(ii) **Close-Out of Building Permits:** Seller shall, within 10 days after receipt of Buyer's Permit Inspection notice, have an estimate of costs to remedy Permit Inspection items prepared by an appropriately licensed person and a copy delivered to Buyer. No later than 5 days prior to Closing Date, Seller shall, up to the Permit Limit, have open and expired building permits identified by Buyer or known to Seller closed by the applicable governmental entity, and obtain and close any required building permits for improvements to the Property. Prior to Closing Date, Seller will provide Buyer with any written documentation that all open and expired building permits identified by Buyer or known to Seller have been closed out and that Seller has obtained and closed required building permits for improvements to the Property. If final permit inspections cannot be performed due to delays by the governmental entity, Closing Date shall be extended for up to 10 days to complete such final inspections, failing which, either party may terminate this Contract, and Buyer shall be refunded the Deposit, thereby releasing Buyer and Seller from all further obligations under this Contract.

If cost to close open or expired building permits or to remedy any permit violation of any governmental entity exceeds Permit Limit, then within 5 days after a party's receipt of estimates of cost to remedy: (A) Seller may elect to pay the excess by delivering written notice to Buyer; or (B) Buyer may deliver written notice to Seller accepting the Property in its "as is" condition with regard to building permit status and agreeing to receive credit from Seller at Closing in the amount of Permit Limit. If neither party delivers such written notice to the other, then either party may terminate this Contract and Buyer shall be refunded the Deposit, thereby releasing Buyer and Seller from all further obligations under this Contract.

(e) **WALK-THROUGH INSPECTION/RE-INSPECTION:** On the day prior to Closing Date, or on Closing Date prior to time of Closing, as specified by Buyer, Buyer or Buyer's representative may perform a walk-through (and follow-up walk-through, if necessary) inspection of the Property solely to confirm that all items of Personal Property are on the Property and to verify that Seller has maintained the Property as required by the Maintenance Requirement, has made repairs and replacements required by this Contract, and has met all other contractual obligations.

(f) **REPAIR STANDARDS; ASSIGNMENT OF REPAIR AND TREATMENT CONTRACTS AND WARRANTIES:** All repairs and replacements shall be completed in a good and workmanlike manner by an appropriately licensed person, in accordance with all requirements of law, and shall consist of materials or items of quality, value, capacity and performance comparable to, or better than, that existing as of the Effective Date. Except as provided in Paragraph 12(c)(ii), at Buyer's option and cost, Seller will, at Closing, assign all assignable repair, treatment and maintenance contracts and warranties to Buyer.

## ESCROW AGENT AND BROKER

**13. ESCROW AGENT:** Any Closing Agent or Escrow Agent (collectively "Agent") receiving the Deposit, other funds and other items is authorized, and agrees by acceptance of them, to deposit them promptly, hold same in escrow within the State of Florida and, subject to **COLLECTION**, disburse them in accordance with terms and conditions of this Contract. Failure of funds to become **COLLECTED** shall not excuse Buyer's performance. When conflicting demands for the Deposit are received, or Agent has a good faith doubt as to entitlement to the Deposit, Agent may take such actions permitted by this Paragraph 13, as Agent deems advisable. If in doubt as to Agent's duties or liabilities under this Contract, Agent may, at Agent's option, continue to hold the subject matter of the escrow until the parties agree to its disbursement or until a final judgment of a court of competent jurisdiction shall determine the rights of the parties, or Agent may deposit same with the clerk of the circuit court having jurisdiction of the dispute. An attorney who represents a party and also acts as Agent may represent such party in such action. Upon notifying all parties concerned of such action, all liability on the part of Agent shall fully terminate, except to the extent of accounting for any items previously delivered out of escrow. If a licensed real estate broker, Agent will comply with provisions of Chapter 475, F.S., as amended and FREC rules to timely resolve escrow disputes through mediation, arbitration, interpleader or an escrow disbursement order.

In any proceeding between Buyer and Seller wherein Agent is made a party because of acting as Agent hereunder, or in any proceeding where Agent interpleads the subject matter of the escrow, Agent shall recover reasonable

FloridaRealtors/FloridaBar-5   Rev. 4/17 © 2017 Florida Realtors® and The Florida Bar. All rights reserved.
Case 3:19-bk-00690   Doc 38   Filed 04/08/19   Entered 04/08/19 13:42:25   Desc Main
Document   Page 15 of 37

attorney's fees and costs incurred, to be paid pursuant to court order out of the escrowed funds or equivalent. Agent shall not be liable to any party or person for mis-delivery of any escrowed items, unless such mis-delivery is due to Agent's willful breach of this Contract or Agent's gross negligence. This Paragraph 13 shall survive Closing or termination of this Contract.

**14. PROFESSIONAL ADVICE; BROKER LIABILITY:** Broker advises Buyer and Seller to verify Property condition, square footage, and all other facts and representations made pursuant to this Contract and to consult appropriate professionals for legal, tax, environmental, and other specialized advice concerning matters affecting the Property and the transaction contemplated by this Contract. Broker represents to Buyer that Broker does not reside on the Property and that all representations (oral, written or otherwise) by Broker are based on Seller representations or public records. **BUYER AGREES TO RELY SOLELY ON SELLER, PROFESSIONAL INSPECTORS AND GOVERNMENTAL AGENCIES FOR VERIFICATION OF PROPERTY CONDITION, SQUARE FOOTAGE AND FACTS THAT MATERIALLY AFFECT PROPERTY VALUE AND NOT ON THE REPRESENTATIONS (ORAL, WRITTEN OR OTHERWISE) OF BROKER.** Buyer and Seller (individually, the "Indemnifying Party") each individually indemnifies, holds harmless, and releases Broker and Broker's officers, directors, agents and employees from all liability for loss or damage, including all costs and expenses, and reasonable attorney's fees at all levels, suffered or incurred by Broker and Broker's officers, directors, agents and employees in connection with or arising from claims, demands or causes of action instituted by Buyer or Seller based on: (i) inaccuracy of information provided by the Indemnifying Party or from public records; (ii) Indemnifying Party's misstatement(s) or failure to perform contractual obligations; (iii) Broker's performance, at Indemnifying Party's request, of any task beyond the scope of services regulated by Chapter 475, F.S., as amended, including Broker's referral, recommendation or retention of any vendor for, or on behalf of, Indemnifying Party; (iv) products or services provided by any such vendor for, or on behalf of, Indemnifying Party; and (v) expenses incurred by any such vendor. Buyer and Seller each assumes full responsibility for selecting and compensating their respective vendors and paying their other costs under this Contract whether or not this transaction closes. This Paragraph 14 will not relieve Broker of statutory obligations under Chapter 475, F.S., as amended. For purposes of this Paragraph 14, Broker will be treated as a party to this Contract. This Paragraph 14 shall survive Closing or termination of this Contract.

**DEFAULT AND DISPUTE RESOLUTION**

**15. DEFAULT:**

(a) **BUYER DEFAULT:** If Buyer fails, neglects or refuses to perform Buyer's obligations under this Contract, including payment of the Deposit, within the time(s) specified, Seller may elect to recover and retain the Deposit for the account of Seller as agreed upon liquidated damages, consideration for execution of this Contract, and in full settlement of any claims, whereupon Buyer and Seller shall be relieved from all further obligations under this Contract, or Seller, at Seller's option, may, pursuant to Paragraph 16, proceed in equity to enforce Seller's rights under this Contract. The portion of the Deposit, if any, paid to Listing Broker upon default by Buyer, shall be split equally between Listing Broker and Cooperating Broker; provided however, Cooperating Broker's share shall not be greater than the commission amount Listing Broker had agreed to pay to Cooperating Broker.

(b) **SELLER DEFAULT:** If for any reason other than failure of Seller to make Seller's title marketable after reasonable diligent effort, Seller fails, neglects or refuses to perform Seller's obligations under this Contract, Buyer may elect to receive return of Buyer's Deposit without thereby waiving any action for damages resulting from Seller's breach, and, pursuant to Paragraph 16, may seek to recover such damages or seek specific performance.

This Paragraph 15 shall survive Closing or termination of this Contract.

**16. DISPUTE RESOLUTION:** Unresolved controversies, claims and other matters in question between Buyer and Seller arising out of, or relating to, this Contract or its breach, enforcement or interpretation ("Dispute") will be settled as follows:

(a) Buyer and Seller will have 10 days after the date conflicting demands for the Deposit are made to attempt to resolve such Dispute, failing which, Buyer and Seller shall submit such Dispute to mediation under Paragraph 16(b).

(b) Buyer and Seller shall attempt to settle Disputes in an amicable manner through mediation pursuant to Florida Rules for Certified and Court-Appointed Mediators and Chapter 44, F.S., as amended (the "Mediation Rules"). The mediator must be certified or must have experience in the real estate industry. Injunctive relief may be sought without first complying with this Paragraph 16(b). Disputes not settled pursuant to this Paragraph 16 may be resolved by instituting action in the appropriate court having jurisdiction of the matter. This Paragraph 16 shall survive Closing or termination of this Contract.

**17. ATTORNEY'S FEES; COSTS:** The parties will split equally any mediation fee incurred in any mediation permitted by this Contract, and each party will pay their own costs, expenses and fees, including attorney's fees, incurred in conducting the mediation. In any litigation permitted by this Contract, the prevailing party shall be entitled to recover



dotloop signature verification: dtlp.us/J2tL-AguR-7HXI

443 from the non-prevailing party costs and fees, including reasonable attorney's fees, incurred in conducting the
444 litigation. This Paragraph 17 shall survive Closing or termination of this Contract.

**STANDARDS FOR REAL ESTATE TRANSACTIONS ("STANDARDS")**

445 **18. STANDARDS:**
446 **A. TITLE:**
447 (i) **TITLE EVIDENCE; RESTRICTIONS; EASEMENTS; LIMITATIONS:** Within the time period provided in
448 Paragraph 9(c), the Title Commitment, with legible copies of instruments listed as exceptions attached thereto, shall
449 be issued and delivered to Buyer. The Title Commitment shall set forth those matters to be discharged by Seller at
450 or before Closing and shall provide that, upon recording of the deed to Buyer, an owner's policy of title insurance
451 in the amount of the Purchase Price, shall be issued to Buyer insuring Buyer's marketable title to the Real Property,
452 subject only to the following matters: (a) comprehensive land use plans, zoning, and other land use restrictions,
453 prohibitions and requirements imposed by governmental authority; (b) restrictions and matters appearing on the
454 Plat or otherwise common to the subdivision; (c) outstanding oil, gas and mineral rights of record without right of
455 entry; (d) unplatted public utility easements of record (located contiguous to real property lines and not more than
456 10 feet in width as to rear or front lines and 7 1/2 feet in width as to side lines); (e) taxes for year of Closing and
457 subsequent years; and (f) assumed mortgages and purchase  money mortgages, if any (if additional items, attach
458 addendum); provided, that, unless waived by Paragraph 12 (a), there exists at Closing no violation of the foregoing
459 and none prevent use of the Property for **RESIDENTIAL PURPOSES**. If there exists at Closing any violation of
460 items identified in (b) – (f) above, then the same shall be deemed a title defect. Marketable title shall be determined
461 according to applicable Title Standards adopted by authority of The Florida Bar and in accordance with law.
462 (ii) **TITLE EXAMINATION:** Buyer shall have 5 days after receipt of Title Commitment to examine it and notify Seller
463 in writing specifying defect(s), if any, that render title unmarketable. If Seller provides Title Commitment and it is
464 delivered to Buyer less than 5 days prior to Closing Date, Buyer may extend Closing for up to 5 days after date of
465 receipt to examine same in accordance with this STANDARD A. Seller shall have 30 days ("Cure Period") after
466 receipt of Buyer's notice to take reasonable diligent efforts to remove defects. If Buyer fails to so notify Seller, Buyer
467 shall be deemed to have accepted title as it then is. If Seller cures defects within Cure Period, Seller will deliver
468 written notice to Buyer (with proof of cure acceptable to Buyer and Buyer's attorney) and the parties will close this
469 Contract on Closing Date (or if Closing Date has passed, within 10 days after Buyer's receipt of Seller's notice). If
470 Seller is unable to cure defects within Cure Period, then Buyer may, within 5 days after expiration of Cure Period,
471 deliver written notice to Seller: (a) extending Cure Period for a specified period not to exceed 120 days within which
472 Seller shall continue to use reasonable diligent effort to remove or cure the defects ("Extended Cure Period"); or
473 (b) electing to accept title with existing defects and close this Contract on Closing Date (or if Closing Date has
474 passed, within the earlier of 10 days after end of Extended Cure Period or Buyer's receipt of Seller's notice), or (c)
475 electing to terminate this Contract and receive a refund of the Deposit, thereby releasing Buyer and Seller from all
476 further obligations under this Contract.  If after reasonable diligent effort, Seller is unable to timely cure defects, and
477 Buyer does not waive the defects, this Contract shall terminate, and Buyer shall receive a refund of the Deposit,
478 thereby releasing Buyer and Seller from all further obligations under this Contract.
479 **B. SURVEY:** If Survey discloses encroachments on the Real Property or that improvements located thereon
480 encroach on setback lines, easements, or lands of others, or violate any restrictions, covenants, or applicable
481 governmental regulations described in STANDARD A (i)(a), (b) or (d) above, Buyer shall deliver written notice of
482 such matters, together with a copy of Survey, to Seller within 5 days after Buyer's receipt of Survey, but no later
483 than Closing. If Buyer timely delivers such notice and Survey to Seller, such matters identified in the notice and
484 Survey shall constitute a title defect, subject to cure obligations of STANDARD A above. If Seller has delivered a
485 prior survey, Seller shall, at Buyer's request, execute an affidavit of "no change" to the Real Property since the
486 preparation of such prior survey, to the extent the affirmations therein are true and correct.
487 **C. INGRESS AND EGRESS:** Seller represents that there is ingress and egress to the Real Property and title to
488 the Real Property is insurable in accordance with STANDARD A without exception for lack of legal right of access.
489 **D. LEASE INFORMATION:** Seller shall, at least 10 days prior to Closing, furnish to Buyer estoppel letters from
490 tenant(s)/occupant(s) specifying nature and duration of occupancy, rental rates, advanced rent and security
491 deposits paid by tenant(s) or occupant(s)("Estoppel Letter(s)"). If Seller is unable to obtain such Estoppel Letter(s),
492 the same information shall be furnished by Seller to Buyer within that time period in the form of a Seller's affidavit,
493 and Buyer may thereafter contact tenant(s) or occupant(s) to confirm such information. If Estoppel Letter(s) or
494 Seller's affidavit, if any, differ materially from Seller's representations and lease(s) provided pursuant to Paragraph
495 6, or if tenant(s)/occupant(s) fail or refuse to confirm Seller's affidavit, Buyer may deliver written notice to Seller
496 within 5 days after receipt of such information, but no later than 5 days prior to Closing Date, terminating this

 
FloridaRealtors/FloridaBar- 5_ Rev.9/17 © 2017 Florida Realtors® and The Florida Bar.  All rights reserved.

Case 3:19-bk-00690   Doc 38   Filed 04/08/19   Entered 04/08/19 13:42:25   Desc Main
Document    Page 17 of 37

dotloop signature verification: dtlp.us/J2tL-AguR-7HXl

**STANDARDS FOR REAL ESTATE TRANSACTIONS ("STANDARDS") CONTINUED**

497 Contract and receive a refund of the Deposit, thereby releasing Buyer and Seller from all further obligations under
498 this Contract. Seller shall, at Closing, deliver and assign all leases to Buyer who shall assume Seller's obligations
499 thereunder.
500 **E. LIENS:** Seller shall furnish to Buyer at Closing an affidavit attesting (i) to the absence of any financing
501 statement, claims of lien or potential lienors known to Seller and (ii) that there have been no improvements or
502 repairs to the Real Property for 90 days immediately preceding Closing Date. If the Real Property has been
503 improved or repaired within that time, Seller shall deliver releases or waivers of construction liens executed by all
504 general contractors, subcontractors, suppliers and materialmen in addition to Seller's lien affidavit setting forth
505 names of all such general contractors, subcontractors, suppliers and materialmen, further affirming that all charges
506 for improvements or repairs which could serve as a basis for a construction lien or a claim for damages have been
507 paid or will be paid at Closing.
508 **F. TIME:** Calendar days shall be used in computing time periods. **Time is of the essence in this Contract.** Other
509 than time for acceptance and Effective Date as set forth in Paragraph 3, any time periods provided for or dates
510 specified in this Contract, whether preprinted, handwritten, typewritten or inserted herein, which shall end or occur
511 on a Saturday, Sunday, or a national legal holiday (see 5 U.S.C. 6103) shall extend to 5:00 p.m. (where the Property
512 is located) of the next business day.
513 **G. FORCE MAJEURE**: Buyer or Seller shall not be required to perform any obligation under this Contract or be
514 liable to each other for damages so long as performance or non-performance of the obligation, or the availability of
515 services, insurance or required approvals essential to Closing, is disrupted, delayed, caused or prevented by Force
516 Majeure. "Force Majeure" means: hurricanes, floods, extreme weather, earthquakes, fire, or other acts of God,
517 unusual transportation delays, or wars, insurrections, or acts of terrorism, which, by exercise of reasonable diligent
518 effort, the non-performing party is unable in whole or in part to prevent or overcome. All time periods, including
519 Closing Date, will be extended a reasonable time up to 7 days after the Force Majeure no longer prevents
520 performance under this Contract, provided, however, if such Force Majeure continues to prevent performance under
521 this Contract more than 30 days beyond Closing Date, then either party may terminate this Contract by delivering
522 written notice to the other and the Deposit shall be refunded to Buyer, thereby releasing Buyer and Seller from all
523 further obligations under this Contract.
524 **H. CONVEYANCE:** Seller shall convey marketable title to the Real Property by statutory warranty, trustee's,
525 personal representative's, or guardian's deed, as appropriate to the status of Seller, subject only to matters
526 described in STANDARD A and those accepted by Buyer. Personal Property shall, at request of Buyer, be
527 transferred by absolute bill of sale with warranty of title, subject only to such matters as may be provided for in this
528 Contract.
529 **I. CLOSING LOCATION; DOCUMENTS; AND PROCEDURE:**
530 (i) **LOCATION:** Closing will be conducted by the attorney or other closing agent ("Closing Agent") designated by
531 the party paying for the owner's policy of title insurance and will take place in the county where the Real Property
532 is located at the office of the Closing Agent, or at such other location agreed to by the parties. If there is no title
533 insurance, Seller will designate Closing Agent. Closing may be conducted by mail, overnight courier, or electronic
534 means.
535 (ii) **CLOSING DOCUMENTS:** Seller shall, at or prior to Closing, execute and deliver, as applicable, deed, bill of
536 sale, certificate(s) of title or other documents necessary to transfer title to the Property, construction lien affidavit(s),
537 owner's possession and no lien affidavit(s), and assignment(s) of leases. Seller shall provide Buyer with paid
538 receipts for all work done on the Property pursuant to this Contract. Buyer shall furnish and pay for, as applicable,
539 the survey, flood elevation certification, and documents required by Buyer's lender.
540 (iii) **FinCEN GTO NOTICE. If Closing Agent is required to comply with the U.S. Treasury Department's**
541 **Financial Crimes Enforcement Network ("FinCEN") Geographic Targeting Orders ("GTOs"), then Buyer**
542 **shall provide Closing Agent with the information related to Buyer and the transaction contemplated by this**
543 **Contract that is required to complete IRS Form 8300, and Buyer consents to Closing Agent's collection and**
544 **report of said information to IRS.**
545 (iv) **PROCEDURE:** The deed shall be recorded upon **COLLECTION** of all closing funds. If the Title Commitment
546 provides insurance against adverse matters pursuant to Section 627.7841, F.S., as amended, the escrow closing
547 procedure required by STANDARD J shall be waived, and Closing Agent shall, **subject to COLLECTION of all**
548 **closing funds,** disburse at Closing the brokerage fees to Broker and the net sale proceeds to Seller.
549 **J. ESCROW CLOSING PROCEDURE:** If Title Commitment issued pursuant to Paragraph 9(c) does not provide
550 for insurance against adverse matters as permitted under Section 627.7841, F.S., as amended, the following
551 escrow and closing procedures shall apply: (1) all Closing proceeds shall be held in escrow by the Closing Agent
552 for a period of not more than 10 days after Closing; (2) if Seller's title is rendered unmarketable, through no fault of
553 Buyer, Buyer shall, within the 10 day period, notify Seller in writing of the defect and Seller shall have 30 days from

Buyer's Initials [MG] 03/04/19 [MG] 03/04/19  Page 10 of 13  Seller's Initials [DKS] [ADS]
FloridaRealtors/FloridaBar- 5_ Rev.10/17 © 2017 Florida Realtors® and The Florida Bar. All rights reserved.

dotloop signature verification: dtlp.us/J2tL-AguR-7HXl

## STANDARDS FOR REAL ESTATE TRANSACTIONS ("STANDARDS") CONTINUED

554  date of receipt of such notification to cure the defect; (3) if Seller fails to timely cure the defect, the Deposit and all
555  Closing funds paid by Buyer shall, within 5 days after written demand by Buyer, be refunded to Buyer and,
556  simultaneously with such repayment, Buyer shall return the Personal Property, vacate the Real Property and re-
557  convey the Property to Seller by special warranty deed and bill of sale; and (4) if Buyer fails to make timely demand
558  for refund of the Deposit, Buyer shall take title as is, waiving all rights against Seller as to any intervening defect
559  except as may be available to Buyer by virtue of warranties contained in the deed or bill of sale.

560  **K. PRORATIONS; CREDITS:** The following recurring items will be made current (if applicable) and prorated as of
561  the day prior to Closing Date, or date of occupancy if occupancy occurs before Closing Date: real estate taxes
562  (including special benefit tax assessments imposed by a CDD), interest, bonds, association fees, insurance, rents
563  and other expenses of Property. Buyer shall have option of taking over existing policies of insurance, if assumable,
564  in which event premiums shall be prorated. Cash at Closing shall be increased or decreased as may be required
565  by prorations to be made through day prior to Closing. Advance rent and security deposits, if any, will be credited
566  to Buyer. Escrow deposits held by Seller's mortgagee will be paid to Seller. Taxes shall be prorated based on
567  current year's tax. If Closing occurs on a date when current year's millage is not fixed but current year's assessment
568  is available, taxes will be prorated based upon such assessment and prior year's millage. If current year's
569  assessment is not available, then taxes will be prorated on prior year's tax. If there are completed improvements
570  on the Real Property by January 1st of year of Closing, which improvements were not in existence on January 1st
571  of prior year, then taxes shall be prorated based upon prior year's millage and at an equitable assessment to be
572  agreed upon between the parties, failing which, request shall be made to the County Property Appraiser for an
573  informal assessment taking into account available exemptions. In all cases, due allowance shall be made for the
574  maximum allowable discounts and applicable homestead and other exemptions. A tax proration based on an
575  estimate shall, at either party's request, be readjusted upon receipt of current year's tax bill. This STANDARD K
576  shall survive Closing.

577  **L. ACCESS TO PROPERTY TO CONDUCT APPRAISALS, INSPECTIONS, AND WALK-THROUGH:** Seller
578  shall, upon reasonable notice, provide utilities service and access to Property for appraisals and inspections,
579  including a walk-through (or follow-up walk-through if necessary) prior to Closing.

580  **M. RISK OF LOSS:** If, after Effective Date, but before Closing, Property is damaged by fire or other casualty
581  ("Casualty Loss") and cost of restoration (which shall include cost of pruning or removing damaged trees) does not
582  exceed 1.5% of Purchase Price, cost of restoration shall be an obligation of Seller and Closing shall proceed
583  pursuant to terms of this Contract. If restoration is not completed as of Closing, a sum equal to 125% of estimated
584  cost to complete restoration (not to exceed 1.5% of Purchase Price) will be escrowed at Closing. If actual cost of
585  restoration exceeds escrowed amount, Seller shall pay such actual costs (but, not in excess of 1.5% of Purchase
586  Price). Any unused portion of escrowed amount shall be returned to Seller. If cost of restoration exceeds 1.5% of
587  Purchase Price, Buyer shall elect to either take Property "as is" together with the 1.5%, or receive a refund of the
588  Deposit thereby releasing Buyer and Seller from all further obligations under this Contract. Seller's sole obligation
589  with respect to tree damage by casualty or other natural occurrence shall be cost of pruning or removal.

590  **N. 1031 EXCHANGE:** If either Seller or Buyer wish to enter into a like-kind exchange (either simultaneously with
591  Closing or deferred) under Section 1031 of the Internal Revenue Code ("Exchange"), the other party shall cooperate
592  in all reasonable respects to effectuate the Exchange, including execution of documents; provided, however,
593  cooperating party shall incur no liability or expense related to the Exchange, and Closing shall not be contingent
594  upon, nor extended or delayed by, such Exchange.

595  **O. CONTRACT NOT RECORDABLE; PERSONS BOUND; NOTICE; DELIVERY; COPIES; CONTRACT**
596  **EXECUTION:** Neither this Contract nor any notice of it shall be recorded in any public records. This Contract shall
597  be binding on, and inure to the benefit of, the parties and their respective heirs or successors in interest. Whenever
598  the context permits, singular shall include plural and one gender shall include all. Notice and delivery given by or to
599  the attorney or broker (including such broker's real estate licensee) representing any party shall be as effective as
600  if given by or to that party. All notices must be in writing and may be made by mail, personal delivery or electronic
601  (including "pdf") media. A facsimile or electronic (including "pdf") copy of this Contract and any signatures hereon
602  shall be considered for all purposes as an original. This Contract may be executed by use of electronic signatures,
603  as determined by Florida's Electronic Signature Act and other applicable laws.

604  **P. INTEGRATION; MODIFICATION:** This Contract contains the full and complete understanding and agreement
605  of Buyer and Seller with respect to the transaction contemplated by this Contract and no prior agreements or
606  representations shall be binding upon Buyer or Seller unless included in this Contract. No modification to or change
607  in this Contract shall be valid or binding upon Buyer or Seller unless in writing and executed by the parties intended
608  to be bound by it.

FloridaRealtors/FloridaBar- 5.  Rev 6/17 © 2017 Florida Realtors® and The Florida Bar. All rights reserved.

dotloop signature verification: dtlp.us/J2tL-AguR-7HXI

## STANDARDS FOR REAL ESTATE TRANSACTIONS ("STANDARDS") CONTINUED

609 **Q. WAIVER:** Failure of Buyer or Seller to insist on compliance with, or strict performance of, any provision of this
610 Contract, or to take advantage of any right under this Contract, shall not constitute a waiver of other provisions or
611 rights.
612 **R. RIDERS; ADDENDA; TYPEWRITTEN OR HANDWRITTEN PROVISIONS:** Riders, addenda, and typewritten
613 or handwritten provisions shall control all printed provisions of this Contract in conflict with them.
614 **S. COLLECTION or COLLECTED: "COLLECTION" or "COLLECTED" means any checks tendered or**
615 **received, including Deposits, have become actually and finally collected and deposited in the account of**
616 **Escrow Agent or Closing Agent. Closing and disbursement of funds and delivery of closing documents**
617 **may be delayed by Closing Agent until such amounts have been COLLECTED in Closing Agent's accounts.**
618 **T. RESERVED.**
619 **U. APPLICABLE LAW AND VENUE:** This Contract shall be construed in accordance with the laws of the State
620 of Florida and venue for resolution of all disputes, whether by mediation, arbitration or litigation, shall lie in the
621 county where the Real Property is located.
622 **V. FIRPTA TAX WITHHOLDING:** If a seller of U.S. real property is a "foreign person" as defined by FIRPTA,
623 Section 1445 of the Internal Revenue Code ("Code") requires the buyer of the real property to withhold up to 15%
624 of the amount realized by the seller on the transfer and remit the withheld amount to the Internal Revenue Service
625 (IRS) unless an exemption to the required withholding applies or the seller has obtained a Withholding Certificate
626 from the IRS authorizing a reduced amount of withholding.
627 (i) No withholding is required under Section 1445 of the Code if the Seller is not a "foreign person". Seller can
628 provide proof of non-foreign status to Buyer by delivery of written certification signed under penalties of perjury,
629 stating that Seller is not a foreign person and containing Seller's name, U.S. taxpayer identification number and
630 home address (or office address, in the case of an entity), as provided for in 26 CFR 1.1445-2(b). Otherwise, Buyer
631 shall withhold the applicable percentage of the amount realized by Seller on the transfer and timely remit said funds
632 to the IRS.
633 (ii) If Seller is a foreign person and has received a Withholding Certificate from the IRS which provides for reduced
634 or eliminated withholding in this transaction and provides same to Buyer by Closing, then Buyer shall withhold the
635 reduced sum required, if any, and timely remit said funds to the IRS.
636 (iii) If prior to Closing Seller has submitted a completed application to the IRS for a Withholding Certificate and has
637 provided to Buyer the notice required by 26 CFR 1.1445-1(c) (2)(i)(B) but no Withholding Certificate has been
638 received as of Closing, Buyer shall, at Closing, withhold the applicable percentage of the amount realized by Seller
639 on the transfer and, at Buyer's option, either (a) timely remit the withheld funds to the IRS or (b) place the funds in
640 escrow, at Seller's expense, with an escrow agent selected by Buyer and pursuant to terms negotiated by the
641 parties, to be subsequently disbursed in accordance with the Withholding Certificate issued by the IRS or remitted
642 directly to the IRS if the Seller's application is rejected or upon terms set forth in the escrow agreement.
643 (iv) In the event the net proceeds due Seller are not sufficient to meet the withholding requirement(s) in this
644 transaction, Seller shall deliver to Buyer, at Closing, the additional COLLECTED funds necessary to satisfy the
645 applicable requirement and thereafter Buyer shall timely remit said funds to the IRS or escrow the funds for
646 disbursement in accordance with the final determination of the IRS, as applicable.
647 (v) Upon remitting funds to the IRS pursuant to this STANDARD, Buyer shall provide Seller copies of IRS Forms
648 8288 and 8288-A, as filed.

### ADDENDA AND ADDITIONAL TERMS

649 * **19. ADDENDA:** The following additional terms are included in the attached addenda or riders and incorporated into this
650 Contract (**Check if applicable**):

| | | |
|---|---|---|
| ☑ A. Condominium Rider | ☐ K. "As Is" | ☐ T. Pre-Closing Occupancy |
| ☐ B. Homeowners' Assn. | ☐ L. Right to Inspect/ Cancel | ☐ U. Post-Closing Occupancy |
| ☐ C. Seller Financing | ☐ M. Defective Drywall | ☐ V. Sale of Buyer's Property |
| ☐ D. Mortgage Assumption | ☐ N. Coastal Construction Control | ☐ W. Back-up Contract |
| ☐ E. FHA/VA Financing | Line | ☐ X. Kick-out Clause |
| ☐ F. Appraisal Contingency | ☐ O. Insulation Disclosure | ☐ Y. Seller's Attorney Approval |
| ☐ G. Short Sale | ☐ P. Lead Paint Disclosure (Pre-1978) | ☐ Z. Buyer's Attorney Approval |
| ☐ H. Homeowners'/Flood Ins | ☐ Q. Housing for Older Persons | ☐ AA. Licensee Property Interest |
| ☐ I. RESERVED | ☐ R. Rezoning | ☐ BB. Binding Arbitration |
| ☐ J. Interest-Bearing Acct. | ☐ S. Lease Purchase/ Lease Option | ☐ Other: _____ |
| | | _____ |
| | | _____ |
| | | _____ |

Buyer's Initials _NG_ 03/04/19 _NG_ 03/04/19   Page 12 of 13   Seller's Initials _DKS_ _ADS_

FloridaRealtors/FloridaBar- 5 Rev 6/17 © 2017 Florida Realtors® and The Florida Bar. All rights reserved.

651 * **20. ADDITIONAL TERMS:** 1. Seller shall provide buyer with HOA documents within 3 days of the effective date.
652     2. Seller shall provide buyer the seller's disclosure within 3 days of the effective date.
653
654
655
656
657
658
659
660
661
662
663
664
665
666
667

668 **COUNTER-OFFER/REJECTION**

669 * ☐ Seller counters Buyer's offer (to accept the counter-offer, Buyer must sign or initial the counter-offered terms and
670 deliver a copy of the acceptance to Seller).
671 * ☐ Seller rejects Buyer's offer.

672 **THIS IS INTENDED TO BE A LEGALLY BINDING CONTRACT. IF NOT FULLY UNDERSTOOD, SEEK THE ADVICE**
673 **OF AN ATTORNEY PRIOR TO SIGNING.**

674 **THIS FORM HAS BEEN APPROVED BY THE FLORIDA REALTORS AND THE FLORIDA BAR.**

675 *Approval of this form by the Florida Realtors and The Florida Bar does not constitute an opinion that any of the terms*
676 *and conditions in this Contract should be accepted by the parties in a particular transaction. Terms and conditions*
677 *should be negotiated based upon the respective interests, objectives and bargaining positions of all interested persons.*

678 AN ASTERISK (*) FOLLOWING A LINE NUMBER IN THE MARGIN INDICATES THE LINE CONTAINS A BLANK TO
679 BE COMPLETED.

680 * Buyer: *Mardelle Gibbs*    dotloop verified 03/04/19 5:59 PM CST IBJ3-28AC-YF4B-S0EB    Date: _____
681 * Buyer: *Neil Gibbs*    dotloop verified 03/04/19 7:07 PM EST MCKA-HJV3-IJ7W-Z4CO    Date: _____
682 * Seller: *David Kevin Sharp*    Date: Mar 6, 2019
683 * Seller: *Annette D Sharp*    Date: Mar 6, 2019

684 Buyer's address for purposes of notice       Seller's address for purposes of notice
685 * 701 East 1st Street, Hinsdale, IL 60521
686 *
687 *

688 **BROKER:** Listing and Cooperating Brokers, if any, named below (collectively, "Broker"), are the only Brokers entitled
689 to compensation in connection with this Contract. Instruction to Closing Agent: Seller and Buyer direct Closing Agent to
690 disburse at Closing the full amount of the brokerage fees as specified in separate brokerage agreements with the parties
691 and cooperative agreements between the Brokers, except to the extent Broker has retained such fees from the
692 escrowed funds. This Contract shall not modify any MLS or other offer of compensation made by Seller or Listing Broker
693 to Cooperating Brokers.

694 * Tammie Holman       Ed & Terri Smith
695 **Cooperating Sales Associate, if any**       **Listing Sales Associate**
696 * Luxury Properties Real Estate       RE/MAX Coastal Properties
697 **Cooperating Broker, if any**       **Listing Broker**

Buyer's Initials [MG 03/04/19] [NG 03/04/19]    Page 13 of 13    Seller's Initials [DKS] [ADS]
FloridaRealtors/FloridaBar- 5   Rev 4/17 © 2017 Florida Realtors® and The Florida Bar. All rights reserved.

dotloop signature verification: [dtlp.us/j3yU-IFyv-ALka](dtlp.us/j3yU-IFyv-ALka)



## Addendum to Contract

Addendum No. __2__ to the Contract with the Effective Date of _____ **03/26/19** _____ between

_____ **David Kevin Sharp and Annette D Sharp** _____ (Seller)

and _____ **Mardelle Gibbs and Neil Gibbs** _____ (Buyer)

concerning the property described as: _____ **112 Seascape Drive UNIT 410, Miramar Beach, FL 3255** _____

_____ **UNIT 410 ARIEL DUNES CONDO OR 2724-2201 OR 2726-388 OR 2762-2568 OR OR 2771-604** _____

(the "Contract").  Seller and Buyer make the following terms and conditions part of the Contract:


Change line 52 Closing date to 05/07/19
Seller agrees to purchase a Home Warrenty from Old Rebublic for up to $500.


Buyer: _Mardelle Gibbs_ dotloop verified
03/27/19 3:26 PM CDT
JZYM-JSGZ-A9WB-SHES                Date: _____

Buyer: _Neil Gibbs_ dotloop verified
03/26/19 9:34 PM CDT
2O1A-HB8L-U57I-R8HH                Date: _____

Seller: _David Kevin Sharp_                Date: _____ **Mar 26, 2019** _____

Seller: _Annette D Sharp_                Date: _____ **Mar 26, 2019** _____

ACSP-4    Rev 6/17                © 2017 Florida \Realtors®

dotloop signature verification: dtlp.us/J2tL-AguR-7HXfi

# Comprehensive Rider to the
# Residential Contract For Sale And Purchase
**THIS FORM HAS BEEN APPROVED BY THE FLORIDA REALTORS AND THE FLORIDA BAR**



**If initialed by all parties**, the clauses below will be incorporated into the Florida Realtors®/Florida Bar Residential Contract
For Sale And Purchase between David Kevin Sharp and Annette D. Sharp _____ (SELLER)
and Mardelle Gibbs and Neil Gibbs _____ (BUYER)
concerning the Property described as 112 Seascape Drive, 410, Miramar Beach, FL 32550 _____

Unit 410 Ariel Dunes Condo Or 2724-2201 Or 2726-388 Or 2762-2568 Or Or 2771-604

*Buyer's Initials*  [MG 03/04/19 5:59 PM CST dotloop verified]  [MG 03/04/19 7:07 PM EST dotloop verified]  *Seller's Initials*  [A.D.S]

## A. CONDOMINIUM RIDER

1. **CONDOMINIUM ASSOCIATION APPROVAL:**
   The Association's approval of Buyer (**CHECK ONE**): ☐ is ☑ is not required. If approval is required, this Contract is contingent upon Buyer being approved by the Association no later than _____ (if left blank, then 5) days prior to Closing. Within _____ (if left blank, then 5) days after Effective Date Seller shall initiate the approval process with the Association and Buyer shall apply for such approval. Buyer and Seller shall sign and deliver any documents required by the Association in order to complete the transfer of the Property and each shall use diligent effort to obtain such approval, including making personal appearances if required. If Buyer is not approved within the stated time period, this Contract shall terminate and Buyer shall be refunded the Deposit, thereby releasing Buyer and Seller from all further obligations under this Contract.

2. **RIGHT OF FIRST REFUSAL:**
   (a) The Association (**CHECK ONE**): ☐ has ☑ does not have a right of first refusal ("Right"). If the Association has a Right, this Contract is contingent upon the Association, within the time permitted for the exercise of such Right, either providing written confirmation to Buyer that the Association is not exercising that Right, or failing to timely exercise such Right pursuant to the terms of the Declaration of Condominium ("Declaration", which reference includes all amendments thereto).
   (b) The members of the Association (**CHECK ONE**): ☐ have ☑ do not have a Right. If the members do have a Right, this Contract is contingent upon the members, within the time permitted for the exercise of such Right, either providing written confirmation to Buyer that the members are not exercising that Right, or failing to timely exercise such Right pursuant to the terms of the Declaration.
   (c) Buyer and Seller shall, within _____ (if left blank, then 5) days after Effective Date, sign and deliver any documents required as a condition precedent to the exercise of the Right, and shall use diligent effort to submit and process the matter with the Association and members, including personal appearances, if required.
   (d) If, within the stated time period, the Association, the members of the Association, or both, fail to provide the written confirmation or the Right has not otherwise expired, then this Contract shall terminate and the Deposit shall be refunded to the Buyer, thereby releasing Buyer and Seller from all further obligations under this Contract.
   (e) If the Association or a member timely exercises its or their Right, this Contract shall terminate and the Deposit shall be refunded to Buyer (unless this Contract provides otherwise), thereby releasing Buyer and Seller from all further obligations under this Contract, and Seller shall pay to Broker the full commission at Closing in recognition that Broker procured the sale.

3. **FEES; ASSESSMENTS; PRORATIONS; LITIGATION:**
   (a) Condominium Association assessment(s) and Rents: Seller represents that the current Association assessment(s) installments is/are

   $521.92 _____ payable (**CHECK ONE**): ☑ monthly ☐ quarterly ☐ semi-annually ☐ annually

   and if more than one Association assessment

   $729.66 _____ payable (**CHECK ONE**): ☐ monthly ☑ quarterly ☐ semi-annually ☐ annually

   and the current rent on recreation areas, if any, is

   $N/A _____ payable (**CHECK ONE**): ☐ monthly ☐ quarterly ☐ semi-annually ☐ annually

CR-5 Rev. 9/15 © 2015 Florida Realtors® and The Florida Bar. All rights reserved.

## A. CONDOMINIUM RIDER (CONTINUED)

All annual assessments levied by the Association and rent on recreational areas, if any, shall be made current by Seller at Closing, and Buyer shall reimburse Seller for prepayments.

(b) Fees: Seller shall, at Closing, pay all fines imposed against the Unit by the Condominium Association as of Closing Date and any fees the Association charges to provide information about the Property, assessment(s) and fees.

***If Property is part of a Homeowners' Association, see Rider B. HOMEOWNERS' ASSOCIATION/COMMUNITY DISCLOSURE for further information including additional assessments and fees***.

(c) Special Assessments and Prorations:

   (i) Seller represents that Seller is not aware of any special or other assessment that has been levied by the Association or that has been an item on the agenda, or reported in the minutes, of the Association within twelve (12) months prior to Effective Date, ("pending") except as follows: <u>None</u>

   (ii) If special assessments levied or pending exist as of the Effective Date are disclosed above by Seller and may be paid in installments (**CHECK ONE**): ☐ Buyer ☑ Seller (if left blank, then Buyer) shall pay installments due after Closing Date. **If Seller is checked, Seller shall pay the assessment in full prior to or at the time of Closing.**

   (iii) If special assessments levied or pending exist as of the Effective Date and have not been disclosed above by Seller, then Seller shall pay such assessments in full at the time of Closing.

   (iv) If, after Effective Date, the Association imposes a special assessment for improvements, work or services, which was not pending as of the Effective Date, then Seller shall pay all amounts due before Closing Date and Buyer shall pay all amounts due after Closing Date.

   (v) A special assessment shall be deemed levied for purposes of this paragraph on the date when the assessment has been approved as required for enforcement pursuant to Florida law and the condominium documents listed in Paragraph 5.

   (vi) Association assets and liabilities, including Association reserve accounts, shall not be prorated.

(d) Litigation: Seller represents that Seller is not aware of pending or anticipated litigation affecting the Property or the common elements, if any, except as follows: <u>None</u>

## 4. SPRINKLER SYSTEM RETROFIT:

If, pursuant to Sections 718.112(2)(l), F.S., the Association has voted to forego retrofitting its fire sprinkler system or handrails and guardrails for the condominium units, then prior to Closing Seller shall furnish to Buyer the written notice of Association's vote to forego such retrofitting.

## 5. NON-DEVELOPER DISCLOSURE:

(**CHECK ONE**):

☐ (a) THE BUYER HEREBY ACKNOWLEDGES THAT BUYER HAS BEEN PROVIDED A CURRENT COPY OF THE DECLARATION OF CONDOMINIUM, ARTICLES OF INCORPORATION OF THE ASSOCIATION, BYLAWS AND RULES OF THE ASSOCIATION, AND A COPY OF THE MOST RECENT YEAR-END FINANCIAL INFORMATION AND FREQUENTLY ASKED QUESTIONS AND ANSWERS DOCUMENT MORE THAN 3 DAYS, EXCLUDING SATURDAYS, SUNDAYS, AND LEGAL HOLIDAYS, PRIOR TO EXECUTION OF THIS CONTRACT.

☑ (b) THIS AGREEMENT IS VOIDABLE BY BUYER BY DELIVERING WRITTEN NOTICE OF THE BUYER'S INTENTION TO CANCEL WITHIN 3 DAYS, EXCLUDING SATURDAYS, SUNDAYS, AND LEGAL HOLIDAYS, AFTER THE DATE OF EXECUTION OF THIS AGREEMENT BY THE BUYER AND RECEIPT BY BUYER OF A CURRENT COPY OF THE DECLARATION OF CONDOMINIUM, ARTICLES OF INCORPORATION, BYLAWS AND RULES OF THE ASSOCIATION, AND A COPY OF THE MOST RECENT YEAR-END FINANCIAL INFORMATION AND FREQUENTLY ASKED QUESTIONS AND ANSWERS DOCUMENT IF SO REQUESTED IN WRITING. ANY PURPORTED WAIVER OF THESE VOIDABILITY RIGHTS SHALL BE OF NO EFFECT. BUYER MAY EXTEND THE TIME FOR CLOSING FOR A PERIOD OF NOT MORE THAN 3 DAYS, EXCLUDING SATURDAYS, SUNDAYS, AND

CR-5  Rev. 9/15 © 2015 Florida Realtors® and The Florida Bar.  All rights reserved.

dotloop signature verification: dtlp.us/J2tL-AguR-7HXl5

LEGAL HOLIDAYS, AFTER THE BUYER RECEIVES THE DECLARATION, ARTICLES OF INCORPORATION, BYLAWS AND RULES OF THE ASSOCIATION, AND A COPY OF THE MOST RECENT YEAR-END FINANCIAL INFORMATION AND FREQUENTLY ASKED QUESTIONS AND ANSWERS DOCUMENT IF REQUESTED IN WRITING. BUYER'S RIGHT TO VOID THIS AGREEMENT SHALL TERMINATE AT CLOSING.

**6. BUYER'S REQUEST FOR DOCUMENTS:**
Buyer is entitled, at Seller's expense, to current copies of the condominium documents specified in Paragraph 5, above. Buyer (**CHECK ONE**): ☑ requests ☐ does not request a current copy of the documents specified in Paragraph 5, above. If this Contract does not close, Buyer shall immediately return the documents to Seller or reimburse Seller for the cost of the documents.

**7. BUYER'S RECEIPT OF DOCUMENTS:**
(**COMPLETE AND CHECK ONLY IF CORRECT**) ☐ Buyer received the documents described in Paragraph 5, above, on _____.

**8. COMMON ELEMENTS; PARKING:**
The Property includes the unit being purchased and an undivided interest in the common elements and appurtenant limited common elements of the condominium, as specified in the Declaration. Seller's right and interest in or to the use of the following parking space(s), garage, and other areas are included in the sale of the Property and shall be assigned to Buyer at Closing, subject to the Declaration:
Parking Space(s) # _____ Garage # _____ Other: _____

**9. INSPECTIONS AND REPAIRS:**
The rights and obligations arising under Paragraphs 11 and 12 of this Contract to maintain, repair, replace or treat are limited to Seller's individual condominium unit and unless Seller is otherwise responsible do not extend to common elements, limited common elements, or any other part of the condominium property.

**10. GOVERNANCE FORM:**
PURSUANT TO CHAPTER 718, FLORIDA STATUTES, BUYER IS ENTITLED TO RECEIVE FROM SELLER A COPY OF THE GOVERNANCE FORM IN THE FORMAT PROVIDED BY THE DIVISION OF FLORIDA CONDOMINIUMS, TIMESHARES AND MOBILE HOMES OF THE DEPARTMENT OF BUSINESS AND PROFESSIONAL REGULATION, SUMMARIZING THE GOVERNANCE OF THE CONDOMINIUM ASSOCIATION.

## Exclusive Right of Sale Listing Agreement



1 This Exclusive Right of Sale Listing Agreement ("Agreement") is between

2* _____ **David Kevin Sharp** _____ **Annette D Sharp** _____ ("**Seller**")

3* and _____ **ED & TERRI SMITH/RE/MAX COASTAL PROPERTIES** _____ ("**Broker**").

4  **1. Authority to Sell Property: Seller** gives **Broker** the EXCLUSIVE RIGHT TO SELL the real and personal
5  property (collectively "Property") described below, at the price and terms described below, beginning
6* _____ 12/28/2018 _____ and terminating at 11:59 p.m. on _____ 06/28/2019 _____ ("Termination Date"). Upon
7  full execution of a contract for sale and purchase of the Property, all rights and obligations of this Agreement will
8  automatically extend through the date of the actual closing of the sales contract. **Seller** and **Broker** acknowledge
9  that this Agreement does not guarantee a sale. This Property will be offered to any person without regard to race,
10 color, religion, sex, handicap, familial status, national origin, or any other factor protected by federal, state, or local
11 law. **Seller** certifies and represents that she/he/it is legally entitled to convey the Property and all improvements.

12 **2. Description of Property:**
13*   **(a) Street Address:** _____ 112 Seascape Drive Unit 410, Miramar Beach, FL 32550 _____

14    _____

15*     Legal Description: _____ Ariel Dunes Unit 410  29-2S-21-42510-000-0410 _____

16*     _____ ☐ See Attachment _____

17*   **(b) Personal Property, including appliances:** _____

18*     _____ ☐ See Attachment _____

19   **(c) Occupancy:**
20*     Property ☐ is ☒ is not currently occupied by a tenant. If occupied, the lease term expires _____.

21 **3. Price and Terms:** The property is offered for sale on the following terms or on other terms acceptable to **Seller**:
22*   **(a) Price:** $_____ 425000 _____
23*   **(b) Financing Terms:** ☒ Cash ☒ Conventional ☐ VA ☐ FHA ☐ Other (specify) _____
24*     ☐ **Seller** Financing: **Seller** will hold a purchase money mortgage in the amount of $_____
25*     with the following terms: _____
26*     ☐ Assumption of Existing Mortgage: Buyer may assume existing mortgage for $_____ plus
27*     an assumption fee of $_____. The mortgage is for a term of _____ years beginning in
28*     _____, at an interest rate of _____% ☐ fixed ☐ variable (describe) _____.
29*     Lender approval of assumption ☐ is required ☐ is not required ☐ unknown. **Notice to Seller: (1)** You may
30    remain liable for an assumed mortgage for a number of years after the Property is sold. Check with your
31    lender to determine the extent of your liability. **Seller** will ensure that all mortgage payments and required
32    escrow deposits are current at the time of closing and will convey the escrow deposit to the buyer at closing.
33    (2) Extensive regulations affect **Seller** financed transactions. It is beyond the scope of a real estate licensee's
34    authority to determine whether the terms of your **Seller** financing agreement comply with all applicable laws or
35    whether you must be registered and/or licensed as a loan originator before offering **Seller** financing. You are
36    advised to consult with a legal or mortgage professional to make this determination.
37*   **(c) Seller Expenses: Seller** will pay mortgage discount or other closing costs not to exceed _____% of the
38    purchase price and any other expenses **Seller** agrees to pay in connection with a transaction.

39 **4. Broker Obligations: Broker** agrees to make diligent and continued efforts to sell the Property until a sales
40    contract is pending on the Property.

41 **5. Multiple Listing Service:** Placing the Property in a multiple listing service (the "MLS") is beneficial to **Seller**
42    because the Property will be exposed to a large number of potential buyers. As a MLS participant, **Broker** is
43    obligated to timely deliver this listing to the MLS. This listing will be promptly published in the MLS unless **Seller**
44    directs **Broker** otherwise in writing. **Seller** authorizes **Broker** to report to the MLS this listing information and price,
45    terms, and financing information on any resulting sale for use by authorized Board / Association members and
46    MLS participants and subscribers unless **Seller** directs **Broker** otherwise in writing.

Seller _DKS_ (_____) and Broker/Sales Associate (_ES_) (_____) acknowledge receipt of a copy of this page, which is Page 1 of 5.
ERS-17tn   Rev 6/17                                                                 © 2017 Florida Realtors®

**6. Broker Authority: Seller** authorizes **Broker** to:

**(a)** Advertise the Property as **Broker** deems advisable including advertising the Property on the Internet unless limited in (6)(a)(i) or (6)(a)(ii) below.

(**Seller opt-out**) (**Check one if applicable**)

    **(i)** ☐ Display the Property on the Internet except the street address.

    **(ii)** ☐ **Seller** does not authorize **Broker** to display the Property on the Internet. **Seller** understands and acknowledges that if **Seller** selects option (ii), consumers who search for listings on the Internet will not see information about the Property in response to their search.

    _____/_____ **Initials of Seller**

**(b)** Place appropriate transaction signs on the Property, including "For Sale" signs and "Sold" signs (once **Seller** signs a sales contract) and use **Seller's** name in connection with marketing or advertising the Property.

**(c)** Obtain information relating to the present mortgage(s) on the Property.

**(d)** Provide objective comparative market analysis information to potential buyers.

**(e)** (**Check if applicable**) ☐ Use a lock box system to show and access the Property. A lock box does not ensure the Property's security. **Seller** is advised to secure or remove valuables. **Seller** agrees that the lock box is for **Seller's** benefit and releases **Broker**, persons working through **Broker**, and **Broker's** local Realtor Board / Association from all liability and responsibility in connection with any damage or loss that occurs. ☐ Withhold verbal offers. ☐ Withhold all offers once **Seller** accepts a sales contract for the Property.

**(f)** Act as a single agent of **Seller** with consent to transition to transaction broker.

**(g) Virtual Office Websites:** Some real estate brokerages offer real estate brokerage services online. These websites are referred to as Virtual Office Websites ("VOWs"). An automated estimate of market value or reviews and comments about a property may be displayed in conjunction with a property on some VOWs. Anyone who registers on a VOW may gain access to such automated valuations or comments and reviews about any property displayed on a VOW. Unless limited below, a VOW may display automated valuations or comments and reviews about this Property.

    ☒ **Seller** does not authorize an automated estimate of the market value of the listing (or a hyperlink to such estimate) to be displayed in immediate conjunction with the listing of this Property.

    ☒ **Seller** does not authorize third parties to write comments or reviews about the listing of the Property (or display a hyperlink to such comments or reviews) in immediate conjunction with the listing of this Property.

**7. Seller Obligations:** In consideration of **Broker's** obligations, **Seller** agrees to:

**(a)** Cooperate with **Broker** in carrying out the purpose of this Agreement, including referring immediately to **Broker** all inquiries regarding the Property's transfer, whether by purchase or any other means of transfer.

**(b)** Provide **Broker** with keys to the Property and make the Property available for **Broker** to show during reasonable times.

**(c)** Inform **Broker** before leasing, mortgaging, or otherwise encumbering the Property.

**(d)** Indemnify **Broker** and hold **Broker** harmless from losses, damages, costs, and expenses of any nature, including attorney's fees, and from liability to any person, that **Broker** incurs because of (1) **Seller's** negligence, representations, misrepresentations, actions, or inactions; (2) the use of a lock box; (3) the existence of undisclosed material facts about the Property; or (4) a court or arbitration decision that a broker who was not compensated in connection with a transaction is entitled to compensation from **Broker**. This clause will survive **Broker's** performance and the transfer of title.

**(e)** Perform any act reasonably necessary to comply with FIRPTA (Section 1445 of the Internal Revenue Code).

**(f)** Make all legally required disclosures, including all facts that materially affect the Property's value and are not readily observable or known by the buyer. **Seller** certifies and represents that **Seller** knows of no such material facts (local government building code violations, unobservable defects, etc.) other than the following:

_____

**Seller** will immediately inform **Broker** of any material facts that arise after signing this Agreement.

**(g)** Consult appropriate professionals for related legal, tax, property condition, environmental, foreign reporting requirements, and other specialized advice.

**8. Compensation: Seller** will compensate **Broker** as specified below for procuring a buyer who is ready, willing, and able to purchase the Property or any interest in the Property on the terms of this Agreement or on any other terms acceptable to **Seller**. **Seller** will pay **Broker** as follows (plus applicable sales tax):

**(a)** _____6.0_____% of the total purchase price plus $_____ OR $_____, no later than the date of closing specified in the sales contract. However, closing is not a prerequisite for **Broker's** fee being earned.

**(b)** _____ ($ or %) of the consideration paid for an option, at the time an option is created. If the option is exercised, **Seller** will pay **Broker** the Paragraph 8(a) fee, less the amount **Broker** received under this subparagraph.

Seller _DKS_ (_____) and Broker/Sales Associate (_ES_) (_____) acknowledge receipt of a copy of this page, which is Page 2 of 5.

ERS-17tn  Rev 6/17                                       © 2017 Florida Realtors®

Case 3:19-bk-00690   Doc 38   Filed 04/08/19   Entered 04/08/19 13:42:25   Desc Main Document     Page 27 of 37

105*    **(c)** _____ ($ or %) of gross lease value as a leasing fee, on the date **Seller** enters into a lease or
106    agreement to lease, whichever is earlier. This fee is not due if the Property is or becomes the subject of a
107    contract granting an exclusive right to lease the Property.
108    **(d) Broker's** fee is due in the following circumstances: (1) If any interest in the Property is transferred, whether by
109    sale, lease, exchange, governmental action, bankruptcy, or any other means of transfer, regardless of whether
110    the buyer is secured by **Seller**, **Broker**, or any other person. (2) If **Seller** refuses or fails to sign an offer at the
111    price and terms stated in this Agreement, defaults on an executed sales contract, or agrees with a buyer to
112*    cancel an executed sales contract. (3) If, within _____ days after Termination Date ("Protection Period"),
113    **Seller** transfers or contracts to transfer the Property or any interest in the Property to any prospects with whom
114    **Seller**, **Broker**, or any real estate licensee communicated regarding the Property before Termination Date.
115    However, no fee will be due **Broker** if the Property is relisted after Termination Date and sold through another
116    broker.
117*    **(e) Retained Deposits:** As consideration for **Broker's** services, **Broker** is entitled to receive _____% (50% if
118    left blank) of all deposits that **Seller** retains as liquidated damages for a buyer's default in a transaction, not to
119    exceed Paragraph 8(a) fee.

120    **9. Cooperation with and Compensation to Other Brokers: Notice to Seller:** The buyer's broker, even if
121    compensated by **Seller** or **Broker**, may represent the interests of the buyer. **Broker's** office policy is to cooperate
122    with all other brokers except when not in **Seller's** best interest and to offer compensation in the amount of
123*    ☒ __2-3__% of the purchase price or $_____ to a single agent for the buyer; ☒ __2-3__% of the
124*    purchase price or $_____ to a transaction broker for the buyer; and ☒ __1__% of the purchase
125*    price or $_____ to a broker who has no brokerage relationship with the buyer.
126*    ☐ None of the above. (If this is checked, the Property cannot be placed in the MLS.)

127    **10. Brokerage Relationship:**
128    **SINGLE AGENT NOTICE**

129    **FLORIDA LAW REQUIRES THAT REAL ESTATE LICENSEES OPERATING AS SINGLE AGENTS DISCLOSE TO**
130    **BUYERS AND SELLERS THEIR DUTIES.**

131*    As a single agent, _____ ED & TERRI SMITH/RE/MAX COASTAL PROPERTIES _____
132    and its associates owe to you the following duties:

133    1. Dealing honestly and fairly;
134    2. Loyalty;
135    3. Confidentiality;
136    4. Obedience;
137    5. Full Disclosure;
138    6. Accounting for all funds;
139    7. Skill, care, and diligence in the transaction;
140    8. Presenting all offers and counteroffers in a timely manner, unless a party has previously directed the licensee
141    otherwise in writing; and
142    9. Disclosing all known facts that materially affect the value of residential real property and are not readily observable.

143*    _David Kevin Sharp_____               _____ Jan 13, 2019 _____
144    Signature                                                                         Date

145*    _____           _____
146    Signature                                                                     Date

147    * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * *

148    **CONSENT TO TRANSITION TO TRANSACTION BROKER**

149    **FLORIDA LAW ALLOWS REAL ESTATE LICENSEES WHO REPRESENT A BUYER OR SELLER AS A SINGLE**
150    **AGENT TO CHANGE FROM A SINGLE AGENT RELATIONSHIP TO A TRANSACTION BROKERAGE**
151    **RELATIONSHIP IN ORDER FOR THE LICENSEE TO ASSIST BOTH PARTIES IN A REAL ESTATE**
152    **TRANSACTION BY PROVIDING A LIMITED FORM OF REPRESENTATION TO BOTH THE BUYER AND THE**
153    **SELLER. THIS CHANGE IN RELATIONSHIP CANNOT OCCUR WITHOUT YOUR PRIOR WRITTEN CONSENT.**

154*    As a transaction broker, _____ ED & TERRI SMITH/RE/MAX COASTAL PROPERTIES _____
155    and its associates, provides to you a limited form of representation that includes the following duties:

156    1. Dealing honestly and fairly;
157    2. Accounting for all funds;
158    3. Using skill, care, and diligence in the transaction;
159    4. Disclosing all known facts that materially affect the value of residential real property and are not readily observable
160    to the buyer;
161    5. Presenting all offers and counteroffers in a timely manner, unless a party has previously directed the licensee
162    otherwise in writing;
163    6. Limited confidentiality, unless waived in writing by a party. This limited confidentiality will prevent disclosure that the
164    seller will accept a price less than the asking or listed price, that the buyer will pay a price greater than the price
165    submitted in a written offer, of the motivation of any party for selling or buying property, that a seller or buyer will agree
166    to financing terms other than those offered, or of any other information requested by a party to remain confidential; and
167    7. Any additional duties that are entered into by this or by separate written agreement.

168    Limited representation means that a buyer or seller is not responsible for the acts of the licensee. Additionally, parties
169    are giving up their rights to the undivided loyalty of the licensee. This aspect of limited representation allows a licensee
170    to facilitate a real estate transaction by assisting both the buyer and the seller, but a licensee will not work to represent
171    one party to the detriment of the other party when acting as a transaction broker to both parties.

172    I agree that my agent may assume the role and duties of a transaction broker.

173*    _David Kevin Sharp_____          _____ Jan 13, 2019 _____
174    Signature                                                 Date

175*    _____          _____
176    Signature                                                   Date

177 **11. Conditional Termination:** At **Seller's** request, **Broker** may agree to conditionally terminate this Agreement. If
178      **Broker** agrees to conditional termination, **Seller** must sign a withdrawal agreement, reimburse **Broker** for all direct
179*    expenses incurred in marketing the Property, and pay a cancellation fee of $_____ plus
180      applicable sales tax. **Broker** may void the conditional termination, and **Seller** will pay the fee stated in Paragraph
181      8(a) less the cancellation fee if **Seller** transfers or contracts to transfer the Property or any interest in the Property
182      during the time period from the date of conditional termination to Termination Date and Protection Period, if
183      applicable.

184 **12. Dispute Resolution:** This Agreement will be construed under Florida law. All controversies, claims, and other
185      matters in question between the parties arising out of or relating to this Agreement or the breach thereof will be
186      settled by first attempting mediation under the rules of the American Mediation Association or other mediator
187      agreed upon by the parties. If litigation arises out of this Agreement, the prevailing party will be entitled to recover
188      reasonable attorney's fees and costs, unless the parties agree that disputes will be settled by arbitration as follows:
189*    **Arbitration:** By initialing in the space provided, **Seller** (_____) (_____), Sales Associate (_____), and **Broker** (_ES_)
190      agree that disputes not resolved by mediation will be settled by neutral binding arbitration in the county in which
191      the Property is located in accordance with the rules of the American Arbitration Association or other arbitrator
192      agreed upon by the parties. Each party to any arbitration (or litigation to enforce the arbitration provision of this
193      Agreement or an arbitration award) will pay its own fees, costs, and expenses, including attorney's fees, and will
194      equally split the arbitrator's fees and administrative fees of arbitration.

195 **13. Miscellaneous:** This Agreement is binding on **Seller's** and **Broker's** heirs, personal representatives,
196      administrators, successors, and assigns. **Broker** may assign this Agreement to another listing office. This
197      Agreement is the entire agreement between **Seller** and **Broker**. No prior or present agreements or representations
198      will be binding on **Seller** or **Broker** unless included in this Agreement. Electronic signatures are acceptable and
199      will be binding. Signatures, initials, and modifications communicated by facsimile will be considered as originals.
200      The term "buyer" as used in this Agreement includes buyers, tenants, exchangors, optionees, and other categories
201      of potential or actual transferees.

202* **14. Additional Terms:** This agreement shall become effective upon termination or expiration of that current listing

203 agreement.

204

205

206

207

208

209

210

211

212

213

214

215

216

217* **Seller's Signature:** _David Kevin Sharp_ Date: _Jan 13, 2019_

218* Home Telephone: _____ Work Telephone: _____ Facsimile: _____

219* Address: _____

220* Email Address: _____

221* **Seller's Signature:** _____ Date: _____

222* Home Telephone: _____ Work Telephone: _____ Facsimile: _____

223* Address: _____

224* Email Address: _____

225* **Authorized Sales Associate or Broker:** _Ed Smith_ Date: _Mar 7, 2019_

226* Brokerage Firm Name: _ED & TERRI SMITH/RE/MAX COASTAL PROPERTIES_ Telephone: _850-837-5500_

227* Address: _725 Harbor Blvd Destin FL 32541_

228* | Copy returned to **Seller** on _011419_ by ☒ email ☐ facsimile ☐ mail ☐ personal delivery. |

Florida REALTORS® makes no representation as to the legal validity or adequacy of any provision of this form in any specific transaction. This standardized form should not be used in complex transactions or with extensive riders or additions. This form is available for use by the entire real estate industry and is not intended to identify the user as REALTOR®. REALTOR® is a registered collective membership mark which may be used only be real estate licensees who are members of the NATIONAL ASSOCIATION OF REALTORS® and who subscribe to its Code of Ethics. The copyright laws of United States (17 U.S. Code) forbid the unauthorized reproduction of this form by any means including facsimile or computerized forms.

Seller _DKS_ (_____) and Broker/Sales Associate (_ES_) (_____) acknowledge receipt of a copy of this page, which is Page 5 of 5.

ERS-17tn    Rev 6/17

© 2017 Florida Realtors®

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE MIDDLE DISTRICT OF TENNESSEE**
**NASHVILLE DIVISION**

IN RE:                    )

                       )       Case No. 3:19-bk-00690

DAVID KEVIN SHARP,       )       Chapter 11

                       )       Judge Marian F. Harrison

      Debtor.            )

**ORDER APPROVING SALE FREE AND CLEAR OF**
**LIENS, CLAIMS, AND ENCUMBRANCES PURSUANT TO 11 U.S.C. § 363**

THIS MATTER IS BEFORE THE COURT upon the Debtor's *Motion for Order Approving Sale Free and Clear of Liens, Claims, and Encumbrances Pursuant to 11 U.S.C. § 363* (the "Motion"). In the Motion, the Debtor sought entry of an Order approving the sale of certain real property located at 112 Seascape Drive, Unit 410, Miramar Beach, FL 32550 (the "Property") free and clear of liens, claims, and encumbrances pursuant to Section 363 of the Bankruptcy Code and Rule 6004 of the Federal Rules of Bankruptcy Procedure. Any capitalized terms not specifically defined herein shall have the meaning ascribed to them in the Motion.

It appearing to the Court that no objections have been filed within the time set forth in the Notice of Motion or under Local Rule 9013, the Court, after due deliberation, makes the following findings of fact and conclusions of law.

**FINDINGS OF FACT AND CONCLUSIONS OF LAW**

A.       The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding to Bankruptcy Rule 9014.

B.       To the extent any of the following findings of fact constitute conclusions of law, they are adopted as such. To the extent any of the following conclusions of law constitute findings of

fact, they are adopted as such.

C.      Proper, timely, adequate, and sufficient notice of the Motion and the hearing thereon was provided in accordance with the Bankruptcy Code, the Federal Rules of Bankruptcy Procedure, and the procedural due process requirements of the United States Constitution.

D.      The Debtor provided a reasonable opportunity for parties in interest to object to or be heard regarding the relief requested in the Motion.

E.      The purchase price to be paid, as set forth in the Agreement, is fair, is in the best interest of the Debtor's estate, and constitutes full and adequate consideration and reasonably equivalent value for the Property.

F.      The Buyer is a purchaser in good faith, as that term is used in the Bankruptcy Code, and is therefore entitled to the protections of Sections 363(m) and (n) of the Bankruptcy Code with respect to all of the Property.  The Agreement was negotiated and entered into in good faith, based upon arm's length bargaining and without collusion.  There are no undisclosed deals or agreements between the Buyer and the Debtor, or any other party in interest.  Neither the Debtor nor the Buyer has engaged in any conduct that would prevent the application of Section 363(m) or cause the application of Section 363(n).

G.      The Debtor has the authority to execute the Agreement and all other documents contemplated thereby.

H.      The Debtor has advanced sound business reasons for seeking to enter the Agreement and for selling the Property, as set forth more fully in the Motion, and the sale of the Property to the Buyer is a reasonable exercise of the Debtor's business judgment.

2

I.      The terms and conditions of the Agreement are fair and reasonable, and the transactions contemplated by the Agreement are in the best interest of the Debtor's creditors and bankruptcy estate.

J.      A valid business purpose exists for approval of the transaction contemplated by the Motion under Section 363(b) of the Bankruptcy Code. The transfer of the Property from the Debtor is a legal, valid, and effective transfer of the Property notwithstanding any requirement for approval or consent by any person.

K.      The Buyer is not assuming any of the debts, liabilities, or obligations of the Debtor. The Agreement is being entered into in good faith and not to hinder, delay, or defraud any creditors of the Debtor. The Debtor shall not in any way be liable or responsible for any liabilities, commitments, or obligations in any way related to the Property arising from and after the Closing Date. The Buyer is not merely a continuation of the Debtor or the estate. There is no continuity of enterprise between the Debtor and the Buyer. The Buyer is not a successor to the Debtor or the estate, and the transactions contemplated in the Agreement do not amount to, or otherwise constitute a consolidation, merger, or *de facto* merger of the Buyer and the Debtor or its estate.

L.      The Court has the jurisdiction to hear and determine the Motion and to grant the relief requested in the Motion pursuant to 28 U.S.C. §§ 157(b)(1) and 1334(b). Venue of this case and of the Motion is proper in this Court under 28 U.S.C. §§ 1408 and 1409.

Accordingly, based on the foregoing, it is hereby ORDERED as follows:

1.      The Motion is hereby granted.

2.      This proceeding is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2)(A),

(N), and (O).

3.     The statutory predicate for the Motion is Section 363 of the Bankruptcy Code and Bankruptcy Rules 2002 and 6004.

4.     The Agreement, and the transaction contemplated thereby, is hereby approved, and the Debtor is authorized and empowered to enter into and perform the obligations under the Agreement and to take such other actions as are necessary or desirable to effectuate the terms of the Agreement.

5.     The Debtor is authorized, empowered, and directed to sell the Property to the Buyer upon delivery of the Purchase Price in accordance with the Agreement and to complete all other deliveries and conditions required of the Agreement.

6.     Pursuant to, and to the extent provided for by Section 363(f) of the Bankruptcy Code, the sale of the Property pursuant to the Agreement and this Order shall be free and clear of any and all liens, claims, encumbrances, interests, and other liabilities, whether secured or unsecured, choate or inchoate, filed or unfiled, scheduled or unscheduled, noticed or unnoticed, recorded or unrecorded, contingent or noncontingent, liquidated or unliquidated, matured or unmatured, disputed or undisputed, or known or unknown, whether arising prior to or subsequent to the Petition Date (collectively, the "Encumbrances").  The Encumbrances on or otherwise attached to the Property shall either be paid at closing to the extent they validly encumber the Property or shall attach to the proceeds of the sale, except for the portion of the proceeds remaining with the Debtor after payment of the amounts set forth herein.  And in accordance with the Motion, the Debtor is authorized to use the proceeds from the sale to satisfy in full (i) the lien of the Lender, (ii) any other claims that

4

constitute liens on the Property, (iii) allowed commissions to the Seller's Broker, and (iv) other costs of sale for which the Debtors are obligation to pay under the Agreement. Any remaining funds following the sale shall be deposited in the Marital Account, as defined in the Motion, for use by the Debtor and his non-filing spouse (a) in the ordinary course of business, (b) as provided in the Disclosure Statement and/or Plan of Reorganization, which have been filed in this case (*See* Docket Nos. 26-27), or (c) in any other manner as the Debtor deems necessary for the benefit of the Debtor or the Debtor's non-filing spouse, including the funding of certain needed repairs to the Debtor's primary residence.

7.      This Order and the Agreement shall be binding upon and shall inure to the benefit of the Debtor and the Buyer, and their respective successors and assigns, including without limitation any chapter 11 trustee hereinafter appointed for the Debtor's estate, or any chapter 7 trustee if this case is converted from chapter 11.

8.      The Court shall retain exclusive jurisdiction to enforce the provisions of this Order and the Agreement, and it shall resolve any dispute concerning this Order, the Agreement, or the rights and duties of the parties thereunder, including but not limited to interpretation of the terms, conditions, and provisions thereof.

9.      The Debtor and the Buyer are free to close immediately under the Agreement in accordance herewith. If the Debtor and the Buyer close under the Agreement, the Buyer shall be deemed to be acting in "good faith" and shall be entitled to the protection of Section 363(m) of the Bankruptcy Code as to all aspects of the transaction provided for in the Agreement and this Order.

10.      The sale approved by this Order is not subject to avoidance under Section 363(n) of

5

the Bankruptcy Code.

11.     The Debtor and the Buyer are authorized and empowered to take all actions (including any pro-rations, adjustments, and similar items required by the Agreement) and to execute and deliver any and all documents and instruments that either the Debtor or the Buyer deem necessary or appropriate to implement and effectuate the terms of the Agreement or this Order.

12.     The Buyer is not a successor to the Debtor or its estate by reason of any theory of law or equity, and the Buyer shall not assume or in any way bear responsibility for any liability or obligation of the Debtor and/or the estate.

13.     All persons are enjoined from taking any action against the Buyer to recover any claim which such person has solely against the Debtor.

14.     The failure specifically to include any particular provision of the Agreement or any related agreements in this Order shall not diminish or impair the effectiveness of such provision, it being the intent of the Court, the Debtor, and the Buyer that the Agreement and any related agreements are authorized and approved in their entirety with such amendments thereto as may be made by the parties in accordance with this Order prior to Closing.

15.     Notwithstanding Bankruptcy Rule 6004(h), this Order will take effect, and the sale contemplated herein shall be permitted to close, immediately upon entry of this Order.

---

THIS ORDER WAS SIGNED AND ENTERED
ELECTRONICALLY AS INDICATED AT THE TOP OF THE FIRST PAGE.

---

6

/s/ Ned Hildebrand
Griffin S. Dunham
Henry E. ("Ned") Hildebrand, IV
DUNHAM HILDEBRAND, PLLC
1704 Charlotte Avenue, Suite 105
Nashville, TN 37203
615.933.5851
griffin@dhnashville.com
ned@dhnashville.com
*Counsel for the Debtor*

7